

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-23-1999

# Abdullah v. Amer Airlines Inc

Precedential or Non-Precedential:

Docket 98-7055

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Abdullah v. Amer Airlines Inc" (1999). *1999 Decisions.* Paper 159.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/159

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 23, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 98-7055 and 98-7056

KHALED ABDULLAH; KHITHAM ABDULLAH;

v.

AMERICAN AIRLINES, INC.

(D.Ct. No. 91-cv-00277)

AUDREY JAMES; EARDLEY JAMES;
VELMA GEORGE; KOTNIE GEORGE

v.

AMERICAN AIRLINES, INC.

(D.Ct. No. 93-cv-00108)

>           Khaled Abdullah and
>           Khitham Abdullah,
>
>           Appellants (No. 98-7055)
>
>           Audrey James, Eardley James,
>           Velma George and Kotnie George,
>
>           Appellants (No. 98-7056)

On Appeal from the Appellate Court of the
District Court of the Virgin Islands
Division of St. Croix
District Judge: Honorable Raymond L. Finch
(D.C. Civil Action No. 91-cv-00277)

Argued December 10, 1998

Before: ROTH, LEWIS and GARTH, Circuit Judges

(Opinion filed: June 23, 1999)

Gordon C. Rhea, Esquire (Argued)
Alkon, Rhea & Hart
2115 Queen Street
Christiansted, St. Croix
USVI, 00820

Lee Rohn, Esquire
Maurice J. Cusick, Esquire (Argued)
Rohn & Cusick
1101 King Street
Christiansted, St. Croix
USVI, 00820

 Attorneys for Appellants

R. Eric Moore, Esquire
Law Office of R. Eric Moore
Downtown Station
P.O. Box 3086
Christiansted, St. Croix
USVI, 00822

Jeffrey J. Ellis, Esquire (Argued)
Quirk & Bakalor
845 Third Avenue
New York, NY 10022

 Attorneys for Appellee

OPINION OF THE COURT

ROTH, Circuit Judge:

After a jury had awarded plaintiffs-appellants Khaled Abdullah, Audrey James, Eardley James, and Velma George damages for injuries sustained during an American Airlines flight, the District Court of the Virgin Islands, Division of Saint Croix, ordered a new trial. The court's action was based on its conclusion that it had improperly relied upon territorial common law to establish the standards of care that were used by the jury to determine that negligence on the part of American Airlines' employees had caused appellants' injuries. Abdullah v. American Airlines, Inc., 969 F. Supp. 337, 340-41 (D.V.I. 1997). The court found that

2

the 1958 Federal Aviation Act, Pub. L. No. 85-726, 72 Stat. 731, (codified as amended at 49 U.S.C. SS 40101-49105) (FAA), implicitly preempts territorial standards for aviation safety,[1] and that the jury should not have been instructed on a territorial law standard of care. Abdullah, 969 F. Supp. at 341. Concluding that the error regarding federal preemption resulted in the admission of evidence on standards of care that was not limited to federally established standards of care and that this evidence was prejudicial, the court ordered a new trial. Id . at 340. At plaintiffs' request, the District Court then certified the following issue for appeal:

> Does federal law preempt the standards for air safety, but preserve State and Territorial damage remedies?

We will answer both parts of this certified question with a "yes." As to the first part of the question, contrary to courts that have found that federal law does not preempt state and territorial air safety standards, or that federal law only preempts discrete aspects thereof, we find implied federal preemption of the entire field of aviation safety. As to the second part, we conclude that, despite federal preemption of the standards of care, state and territorial damage remedies still exist for violation of those standards.

Our finding on preemption is based on our determination that the FAA and relevant federal regulations establish complete and thorough safety standards for interstate and international air transportation and that these standards are not subject to supplementation by, or variation among,

_____

1. Subsequent to the trial in the case at bar but prior to the resolution of American's post-trial motions, American proceeded with related litigation in the Southern District of New York. In that case, the District Court rejected American's contention that federal law preempts aviation safety. Trinidad v. American Airlines, 932 F. Supp. 521 (S.D.N.Y. 1996). However, after issuing that decision and initially deciding not to certify an interlocutory appeal, the District Court issued an Order holding that the preemption of aviation safety is an open question which it then certified for interlocutory appeal to the Second Circuit. The Second Circuit decided not to address the issue at that time. In order to avoid duplicative trial costs, all parties then agreed to not try liability and to be bound by the ultimate liability result in the case pending in the Virgin Islands.

3

jurisdictions. Thus, we agree with the District Court that it was error to rely upon territorial safety standards in determining American Airlines' liability in this case.

In coming to our conclusion on preemption, we do not, however, agree with the narrow nature of the federal standard set out by the District Court. We conclude instead that there is an overarching general standard of care under the FAA and its regulations. This standard arises in particular from 14 C.F.R. S 91.13(a): "No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." Thus, we do not agree with the District Court's determination that evidence on "reasonable standard of care" should necessarily have been excluded -- as long as a "reasonable standard of care" is compatible with an avoidance of carelessness or recklessness in the operation of the aircraft.[2] We will remand this case to the District Court to review both the testimony and the jury instructions on standards of care in order to determine if they are consistent with the standards we set out here. If they are, the jury verdict should be reinstated. If they are not, the District Court should proceed with a new trial, and in that trial the court should follow the federal standards as we establish them here.

I. Background

Plaintiffs Khaled Abdullah, Audrey James, Eardley James, and Velma George were passengers on American Airlines Flight 1473 from New York to San Juan, Puerto Rico, on August 28, 1991. En route, the aircraft encountered severe turbulence which caused serious injuries to a number of passengers, including the plaintiffs. The First Officer had noticed a weather system developing in the flight path and had illuminated the seatbelt sign. He had also gone to the back of the aircraft to warn the flight attendants that the ride could get choppy in ten minutes. None of the crew, however, alerted the passengers of the expected turbulence. Nor did the pilot change course in

_____

2. See our discussion at pp. 15-16.

4

order to avoid the storm. Some of the injured passengers were wearing their seatbelts; some were not.

Plaintiffs filed two separate lawsuits against defendant American Airlines, Inc., alleging negligence on the part of the pilot and flight crew in failing to take reasonable precautions to avoid the turbulent conditions known to them and in failing to give warnings reasonably calculated to permit plaintiffs to take steps to protect themselves.[3]

A jury trial commenced on August 7, 1995, in the District Court of the Virgin Islands, Division of Saint Croix. The plaintiffs' cases were consolidated for trial. On August 25, 1995, the jury found American liable, found plaintiffs to be without any contributory fault, and awarded monetary damages aggregating more than two million dollars.

American filed a post-trial motion which requested dismissal and/or a new trial plus attorney's fees and costs. Among the grounds asserted was that the District Court had improperly used territorial common law to establish the standards of care for the pilots, flight attendants, and passengers. American argued that the FAA implicitly preempts the standards for airline safety.

The District Court issued an Opinion on June 5, 1997, holding that the FAA impliedly preempts state and territorial regulation of aviation safety and standards of care for pilots, flight attendants, and passengers, but that plaintiffs may recover under state and territorial law for violation of federal standards. Abdullah, 969 F. Supp. at 341. The District Court held that its error of law regarding preemption, which resulted in admission of evidence regarding standards other than the federal standards, warranted a new trial.

Upon motion of the plaintiffs, the District Court certified this issue for interlocutory review. We granted interlocutory review.

_____

3. The two cases were previously before this Court when American petitioned for a Writ of Mandamus to transfer the cases to New York. The petition was denied on May 17, 1995. Abdullah v. AMR Corp., 60 F.3d 813 (3d Cir. 1995).

II. Jurisdiction and Standard of Review

Subject matter jurisdiction in the District Court rested on diversity of citizenship. 28 U.S.C. S 1332.

We accepted jurisdiction over this matter pursuant to 28 U.S.C. S 1292(b), which permits us to accept an interlocutory appeal where there is "substantial ground for a difference of opinion" on an issue and "an immediate appeal . . . may materially advance the ultimate termination of the litigation."

The appeal involves a question of law, so that the standard of review is plenary. Epwright v. Environmental Resources Management, Inc. Health & Welfare Plan, 81 F.3d 335, 339 (3d Cir. 1996); Epstein Family Partnership v. Kmart Corp., 13 F.3d 762, 765-66 (3d Cir. 1994).

The scope of review is not limited to the issues articulated in the section 1292(b) certification motion. "As the text of S 1292(b) indicates, appellate jurisdiction applies to the order certified to the court of appeals, and is not tied to the particular question formulated by the district court." Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 205 (1996). "[T]he appellate court may address any issue fairly included within the certified order because `it is the order that is appealable, and not the controlling question identified by the district court.' " Id. (quoting 9 J. Moore & B. Ward, Moore's Federal Practice P 110.25[1], p. 300 (2d ed. 1995)).

III. Discussion

The power of Congress to preempt state law derives from the Supremacy Clause of Article VI of the Constitution, which provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. "Consideration of issues arising under the Supremacy Clause `start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress'." Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)).

"Accordingly, `[t]he purpose of Congress is the ultimate touchstone' of pre-emption analysis." Id. (citation omitted). The Supreme Court has cautioned that "despite the variety of these opportunities for federal preeminence, we have never assumed lightly that Congress has derogated state regulation, but instead have addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law." New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654 (1995). The Court in Cipollone stated the test for preemption:

> Congress' intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977). In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, see Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Dev. Comm'n, 461 U.S. 190, 204 (1983), or if federal law so thoroughly occupies a legislative field" `as to make reasonable the inference that Congress left no room for the States to supplement it'." Fidelity Fed. Sav. & Loan Assn. v. De la Cuesta, 458 U.S. 141, 153 (1982) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. at 230).

505 U.S. at 516.

The instant case concerns the species of preemption known as field preemption. Field preemption occurs if federal law "thoroughly occupies" the "legislative field" in question, i.e., the field of aviation safety. The Supreme Court has characterized field preemption in this way:

> Congress implicitly may indicate an intent to occupy a given field to the exclusion of state law. Such a purpose properly may be inferred where the pervasiveness of the federal regulation precludes supplementation by the States, where the federal interest in the field is sufficiently dominant, or where "the object sought to be obtained by the federal law and the character of obligations imposed by it . . . reveal the same purpose."

7

Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 300 (1988) (quoting Rice, 331 U.S. at 230).4  Thus, implied federal preemption may be found where federal regulation of a field is pervasive, Rice, 331 U.S. at 230, or where state regulation of the field would interfere with Congressional objectives. See Silkwood v. Kerr–McGee Corp., 464 U.S. 238, 248 (1984).

Our finding of implied field preemption here is based on our conclusion that the FAA and relevant federal regulations establish complete and thorough safety standards for interstate and international air transportation that are not subject to supplementation by, or variation among, jurisdictions. While some courts have found federal law to preempt discrete aspects of air safety, e.g. French v. Pan Am Express, Inc., 869 F.2d 1 (1st Cir. 1989); World Airways, Inc. v. International Bhd. of Teamsters, 578 F.2d 800 (9th Cir. 1978); Kohr v. Allegheny Airlines, Inc., 504 F.2d 400 (7th Cir. 1974), we hold that federal law establishes the applicable standards of care in thefield of air safety, generally, thus preempting the entirefield from state and territorial regulation.

In regard, however, to the second part of the certified question, although the term "field preemption" suggests a broad scope, the scope of a field deemed preempted by federal law may be narrowly defined. For instance, in In re TMI Litigation Cases Consolidated II, 940 F.2d 832, 859 (3d Cir. 1991) (TMI II), and In re TMI, 67 F.3d 1103, 1106–07 (3d Cir. 1995) (TMI III), we held that federal regulation of nuclear safety preempted state tort law on the standard of care. Still, even though federal law controlled the standard of care, we held that the question whether causation and damages were federally preempted was a separate consideration. See TMI III, 67 F.3d at 1107.

Similarly, in the instant case, we find that Congress, in enacting the FAA and relevant regulations, intended generally to preempt state and territorial regulation of aviation safety. Nevertheless, we find that plaintiffs may

_____

4. State common law rules may be preempted in the same ways as state statutes or regulations. Public Health Trust v. Lake Aircraft, Inc., 992 F.2d 291, 294 (11th Cir. 1993) (citing Cipollone, 505 U.S. at 523).

8

recover damages under state and territorial remedial schemes.

In coming to our answers to the certified question, we depart from the precedent established by a number of cases which hold that federal law does not preempt any aspect of air safety. See In re Air Crash Disaster at John F. Kennedy Int'l Airport, 635 F.2d 67, 74-75 (2d Cir. 1980); Trinidad v. American Airlines, 932 F. Supp. 521 (S.D.N.Y. 1996); In re Air Crash Disaster at Stapleton Int'l Airport, 721 F. Supp. 1185, 1187 (D. Colo. 1988). As explained below, we find these cases to be unpersuasive, either because these courts presumed, without deciding through in-depth analysis, that the FAA did not preempt state or territorial air safety standards, or because these courts followed the preemption language of the Airline Deregulation Act, 49 U.S.C. S 41713(b)(1) (formerly S 1305(a)(1)) (ADA), an economic deregulation statute that we find inapposite to resolving preemption questions relating to the safety of air operations. Cf. Taj Mahal Travel, Inc. v. Delta Airlines, Inc., 164 F.3d 186, 190-95 (3d Cir. 1998) (finding that defamation action was not preempted by the ADA because it did not involve a regulatory or public utility function). We conclude that Congress's intent to preempt state and territorial regulations of air safety is not affected by the language of the ADA.

A. Federal Preemption of Air Safety Standards

1. Field Preemption

As the District Court set out in its thorough examination of the legislative history, the FAA was enacted in response to a series of "fatal air crashes between civil and military aircraft operating under separate flight rules." United States v. Christensen, 419 F.2d 1401, 1404 (9th Cir. 1969) (quoting 1958 U.S.C.C.A.N. 3741, 3742). Congress's purpose in enacting the FAA was "to promote safety in aviation and thereby protect the lives of persons who travel on board aircraft." In re Mexico City Aircrash of October 31, 1979, 708 F.2d 400, 406 (9th Cir. 1983); accord Rauch v. United Instruments, Inc., 548 F.2d 452, 457 (3d Cir. 1976).

Congress found the creation of a single, uniform system of regulation vital to increasing air safety. City of Burbank

9

v. Lockheed Air Terminal, Inc., 411 U.S. 624, 639 (1973) (noting that "a uniform and exclusive system of federal regulation" is required "if the congressional objectives underlying the [FAA] are to be fulfilled"); Christensen, 419 F.2d at 1404 (remarking that "the whole tenor of the [FAA] and its principal purpose is to create and enforce one unified system of flight rules"). By enacting the FAA, Congress intended to rest sole responsibility for supervising the aviation industry with the federal government:

> [A]viation is unique among transportation industries in its relation to the federal government--it is the only one whose operations are conducted almost wholly within federal jurisdiction, and are subject to little or no regulation by States or local authorities. Thus, the federal government bears virtually complete responsibility for the promotion and supervision of this industry in the public interest.

S.Rep. No. 1811, 85th Cong., 2d Sess. 5 (1958).

Similarly, the House Report accompanying the FAA indicates that one of the purposes of the Act is to give "[t]he Administrator of the new Federal Aviation Agency 5 . . . full responsibility and authority for the advancement and promulgation of civil aeronautics generally, including promulgation and enforcement of safety regulations." H.R.Rep. No. 2360, reprinted in 1958 U.S.C.C.A.N. 3741, 3741. In addition, in a letter included as part of the House Report, the Airways Modernization Board Chairman wrote: "It is essential that one agency of government, and one agency alone, be responsible for issuing safety regulations if we are to have timely and effective guidelines for safety in aviation." Id. at 3761.

Thus, legislative history reveals that Congress intended the Administrator, on behalf of the Federal Aviation Administration, to exercise sole discretion in regulating air

_____

5. Originally called the Federal Aviation Agency, it was later renamed the Federal Aviation Administration and made part of the Department of Transportation. Department of Transportation Act, Pub.L. No. 89-670, SS 3(e)(1), 6(c)(1), 80 Stat. 931, 932, 938 (1966) (codified as amended in scattered sections of 49 U.S.C.).

safety. And this is exactly what Congress accomplished through the FAA. Congress enacted Chapter 447, Safety Regulation, and directed the Administrator to "carry out this chapter in a way that best tends to reduce or eliminate the possibility or recurrence of accidents in air transportation." 49 U.S.C. S 44701(c). See City of Burbank, 411 U.S. at 627 (noting that Congress gave the Administrator of the Federal Aviation Administration "broad authority" with respect to air safety standards).

To effectuate this broad authority to regulate air safety, the Administrator of the FAA has implemented a comprehensive system of rules and regulations, which promotes flight safety by regulating pilot certification,[6] pilot pre-flight duties,[7] pilot flight responsibilities,[8] and flight rules.[9]

The federal courts that adjudicated the first major cases involving the FAA interpreted its legislative history as evincing Congress's intent to exercise supremacy over the field of aviation safety. For instance, just after the passage of the FAA, the Second Circuit Court of Appeals remarked: "The Federal Aviation Act was passed by Congress for the purpose of centralizing in a single authority--indeed, in one administrator--the power to frame rules for the safe and

_____

6. For example, 14 C.F.R. S 61.3 (1996) provides:

> No person may act as pilot in command, or in any other capacity as
> a required pilot flight crew member of a civil aircraft of United
States
> registry unless he has in his personal possession a current pilot
> certificate issued to him under this part.

7. For example, before flight the pilot must review available information concerning the flight, 14 C.F.R. S 91.103 (1996), verify the aircraft's worthiness, 14 C.F.R. S 91.7 (1996), and ensure that passengers are briefed on the use of their seatbelts, 14 C.F.R. S 91.107 (1996).

8. For example, according to 14 C.F.R. S 91.13, "[n]o person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." 14 C.F.R. S 91.13 (1996). Furthermore 14 C.F.R. S 91.7 mandates that "[t]he pilot in command shall discontinue the flight when unairworthy mechanical, electrical, or structural conditions occur."

9. 14 C.F.R. S 91.101 states: "This subpart prescribes flight rules governing the operation of aircraft within the United States and within 12 nautical miles from the coast of the United States."

efficient use of the nation's airspace." Air Line Pilots Ass'n, Int'l v. Quesada, 276 F.2d 892, 894 (2d Cir. 1960).

Then, in City of Burbank, the Supreme Court held that Congress's consolidation of control of aviation in one agency indicated its intent to federally preempt aviation safety. 411 U.S. at 639. In reaching this decision, the Court first noted that the Solicitor General had conceded that airspace management was federally preempted. Id. at 627. Finding this to be a "fatal concession," the Court held that state noise regulation was federally preempted because of its interrelationship with airspace management. Id. at 627–28. Although he dissented in City of Burbank, Justice Rehnquist agreed with the majority on the issue of federal preemption, noting that "Congress clearly intended to pre-empt the States from regulating aircraft in flight." 411 U.S. at 644. According to Justice Rehnquist,

> The 1958 Act was intended to consolidate in one agency in the Executive Branch the control over aviation that had previously been diffused within that branch. The paramount substantive concerns of Congress were to regulate federally all aspects of air safety, . . . and, once aircraft were in "flight," air-space management . . ..

Id. (emphasis added).10

_____

10. The decision in City of Burbank, regarding federal preemption, affirmed sentiments that, prior to the passage of the FAA, the Court had expressed regarding the nature of aviation. For instance, in Northwest Airlines, Inc v. Minnesota, 322 U.S. 292, 303 (1944), Justice Jackson, in a concurrence, expressed the view that federal aviation by nature admits to only one uniform system of safety standards. He remarked:

> Federal control is intensive and exclusive. Planes do not wander about in the sky like vagrant clouds. They move only by federal permission, subject to federal inspection, in the hand of federally certified personnel and under an intricate system of federal commands. The moment a ship taxis onto a runway it is caught up in an elaborate and detailed system of controls. It takes off only by instruction from the control tower, it travels on prescribed beams, it may be diverted from its intended landing, and it obeys signals and orders. Its privileges, rights and protection, so far as transit is concerned, it owes to the Federal Government alone and not to any state governments.

12

In Kohr v. Allegheny Airlines, Inc., 504 F.2d 400 (7th Cir. 1974), a mid-air collision case, the Seventh Circuit found the rights and liabilities of the parties to be federally preempted. The court wrote of Congress's objective in enacting the FAA: "[T]he principal purpose of the [FAA] is to create one unified system of flight rules and to centralize in the Administrator of the Federal Aviation Administration the power to promulgate rules for the safe and efficient use of the country's airspace." Id. at 404. The court found a "predominant, indeed almost exclusive, interest of the federal government in regulating the affairs of the nation's airways." Id. at 403.

Similarly, the Second Circuit recognized the broad scope of the FAA and its implied federal preemption of state air safety standards in British Airways Bd. v. Port Authority of New York, 558 F.2d 75 (2d Cir. 1977), and held that, by enacting the 1968 noise control amendments to the FAA, Congress "intended to strengthen the FAA's regulatory role within the area already totally preempted--control of flights through navigable airspace." Id. at 84; see also id. at 83 (stating that without federal preemption, "[t]he likelihood of multiple, inconsistent rules would be a dagger pointed at the heart of commerce--and the rule applied might come literally to depend on which way the wind was blowing.").

The understanding of the courts in these early cases that the FAA's broad scope implied federal preemption of aviation safety standards, has been affirmed over time. In recent decades, courts of appeals have found implied federal preemption of various aspects of air safety that states have attempted to regulate. For example, the First Circuit in French v. Pan Am Express, Inc., 869 F.2d 1 (1st Cir. 1989), found pilot regulation, which related to air safety, to be federally preempted. Id. at 6. The court held

_____

322 U.S. at 303. This statement was cited by the Court in City of Burbank, 411 U.S. at 638. See also Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 107 (1948) (noting that the nature of aviation "called for a more penetrating, uniform and exclusive regulation by the nation than had been thought appropriate for the more easily controlled commerce of the past.").

13

that "such an intent is implicit in the pervasiveness of relevant federal regulation, the dominance of the federal interest, and the legislative goal of establishing a single, uniform system of control over air safety." Id. at 6-7. The court explained:

> The intricate web of statutory provisions affords no room for the imposition of state law criteria vis-a-vis pilot suitability. We therefore conclude, without serious question, that preemption is implied by the comprehensive legal scheme which imposes on the [Administrator] the duty of qualifying pilots for air service.

Id. at 4.

Because the legislative history of the FAA and its judicial interpretation indicate that Congress's intent was to federally regulate aviation safety, we find that any state or territorial standards of care relating to aviation safety are federally preempted. Our analysis is sustained by reference to the broad scope of the FAA, described above. It also is supported by decisions in which courts found federal preemption of discrete, safety-related matters, such as airspace management, flight operations, and aviation noise, because of the promulgation of specific federal regulations over those aspects of air safety. See, e.g., City of Burbank, 411 U.S. at 633; San Diego Unified Port Dist. v. Gianturco, 651 F.2d 1306, 1316 (9th Cir. 1981); Price v. Charter Township, 909 F. Supp. 498 (E.D. Mich. 1995); see also id. at 1351 n.22 (citing numerous cases in which the courts held flight control regulation to reduce noise federally preempted); Gustafson v. City of Lake Angelus , 76 F.3d 778, 786 (6th Cir. 1996) (stating in dictum that "[federal] regulations preempt local law in regard to aircraft safety, the navigable airspace, and noise control"); id. at 792 (Jones, J., concurring) (agreeing with the majority that local land and water use are not preempted, but that aviation safety, navigable airspace and noise control are preempted).

It follows from the evident intent of Congress that there be federal supervision of air safety and from the decisions in which courts have found federal preemption of discrete, safety-related matters, that federal law preempts the

14

general field of aviation safety. Indeed, it would be illogical to conclude that, while federal law preempts state and territorial regulation of matters such as pilot licensing, it does not preempt regulations relating to the exercise of the specific skill for which licensing is necessary--pilots' operation of aircraft.

Moreover, our move from specific to general regulation is not without support in FAA regulations themselves. For example, 14 C.F.R. S 91.13(a), which governs "Careless or Reckless Operation," supplies a comprehensive standard of care to be exercised by pilots and flight crew. It provides, "No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." In a case then where there is no specific provision or regulation governing air safety, S 91.13(a) provides a general description of the standard required for the safe operation of aircraft.

Thus, in determining the standards of care in an aviation negligence action, a court must refer not only to specific regulations but also to the overall concept that aircraft may not be operated in a careless or reckless manner. The applicable standard of care is not limited to a particular regulation of a specific area; it expands to encompass the issue of whether the overall operation or conduct in question was careless or reckless. Moreover, when a jury is determining what constitutes careless or reckless operation of an aircraft, expert testimony on various aspects of aircraft safety may be helpful to the jury. In the present case, for example, the regulations on the use of seat belts and on the illumination of the "fasten seat belt" sign11 set the standard for determining both whether American

_____

11. FAA regulations require passengers to wear their seat belts when the seat belt sign is illuminated:

> [T]he "Fasten Seat Belt" sign shall be turned on during any movement on the surface, for each takeoff, for each landing, and at any other time considered necessary by the pilot in command. . . . Each passenger . . . shall fasten his or her safety belt around him or her and keep it fastened while the "Fasten Seat Belt" sign is lighted.

14 C.F.R. S 121.317(b), (f).

15

operated the aircraft carelessly or recklessly and whether the passengers, who had not fastened their seatbelts, were contributorily negligent. In addition, expert testimony may help the jury to understand whether the way in which warnings of turbulence and/or illumination of seatbelt signs were conveyed to the passengers constituted careless or reckless operation.

We conclude, therefore, that because of the need for one, consistent means of regulating aviation safety, the standard applied in determining if there has been careless or reckless operation of an aircraft, should be federal; state or territorial regulation is preempted.

B. Divergent Authority

Despite the legislative history and interpreting authority which have informed our decision, many courts have held that the field of aviation safety is not federally preempted. We find, however, that the rationales, on which these courts have relied in reaching this conclusion, are unpersuasive. As explained below, either the courts have presumed, without any in-depth analysis, that the FAA does not preempt state or territorial air safety standards, or they have followed precedent involving the ADA, an economic deregulation statute which is inapposite to resolving preemption questions relating to the FAA and air safety. We will deal with these various rationales in turn.

a. Expressio Unius Est Exclusio Alterius

Expressio unius est exclusio alterius is a Latin maxim which means "to express one is to exclude the other." As with all easy answers, it should be taken with a grain of salt -- or even better, with a grain of common sense.

The maxim has been employed by some courts to justify a decision that air safety standards are not federally preempted. The main rationale for such a finding rests on Section 105(a)(1) of the ADA, which provides that the regulation of "rates, routes, and services" is expressly preempted.12 Based on the language of this section, some

_____

12. Section 105(a)(1) of the ADA provides:

16

courts have observed that state tort law claims for personal injuries connected to airline operations are not preempted. See, e.g., Hodges v. Delta Airlines, Inc., 44 F.3d 334, 338 (5th Cir. 1995); Margolis v. United Airlines, Inc., 811 F. Supp. 318, 321-22 (E.D. Mich.1993) (holding that"nowhere in the legislative history or in the evolution of the [FAA] is there any suggestion that the preemption provision of the [ADA] was intended to preclude common law negligence actions" and collecting cases); see also American Airlines, Inc. v. Wolens, 513 U.S. 219, 231, n.7 (1995) (noting that the United States as Amicus Curiae had conceded that"[i]t is ... unlikely that [the ADA] preempts safety-related personal injury claims relating to airplane operations"). Such a result may not, of course, be inconsistent with our determination that even with federal preemption of standards of care, state tort remedies are preserved. A number of courts have, however, continued to use the state law standard of care, along with state remedies. They have concluded that the standards of care related to aviation safety by implication must not be preempted because expressio unius est exclusio alterius. See, e.g., Public Health Trust v. Lake Aircraft, Inc., 992 F.2d 291, 294-95 (11th Cir. 1993); Cleveland v. Piper Aircraft Corp., 985 F.2d 1438, 1443-44 (10th Cir. 1993).

We agree with American that reliance on this maxim to determine whether safety standards are federally preempted is inappropriate. This maxim "stands on the faulty premise that all possible alternatives or supplemental provisions were necessarily considered and rejected by the legislative draftsmen." National Petroleum Refiners Ass'n v. F.T.C., 482 F.2d 672, 676 (D.D.C.1973). The maxim "serves only as an aid in discovering the legislative intent when that is not otherwise manifest." United States v. Barnes, 222 U.S. 513, 519 (1912). For that reason, it "can never override clear and

_____

[N]o State or political subdivision thereof and no interstate agency or
other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air
carrier.... 49 U.S.C. S 41713(b)(1).

17

contrary evidences of Congressional intent." Neuberger v. Commissioner, 311 U.S. 83, 88 (1940); United States v. Castro, 837 F.2d 441, 443 (11th Cir. 1988) (holding legislative history and context indicate maxim cannot apply); National Ass'n of Metal Finishers v. EPA, 719 F.2d 624, 648 n.33 (3d Cir. 1983) (finding that evidence of legislative intent renders the maxim inapplicable).

As the District Court recognized in its comprehensive examination of the exclusio unius maxim, "the meaning of a statute is found in the evil which it is designed to remedy; and for this the court properly looks at contemporaneous events, the situation as it existed, and as it was pressed upon the attention of the legislative body." Church of the Holy Trinity v. United States, 143 U.S. 457, 463 (1892). Thus, whether the maxim should be applied to the standards of care for pilots, flight attendants, and passengers depends on Congress's intent when it enacted the ADA -- Congress's intent not only with respect to the ADA itself, but also regarding the ADA as it affected and interrelated with the earlier provisions of the FAA.

The ADA was enacted "[t]o ensure that the States would not undo federal deregulation with regulation of their own ... [by] prohibiting the States from enforcing any law `relating to rates, routes, or services' of any air carrier." Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378-79 (1992). Airlines compete against one another by attracting passengers through the rates, routes, and services that they offer. Congress did not want the states to hamper this competition by their own regulation of these areas. Safe operations, however, are a necessity for all airlines. Whether or not to conform to safety standards is not an option for airlines in choosing a mode of competition. For this reason, safety of an airline's operations would not appear to fall within the ambit of the ADA and its pro-competition preemption clause.

Moreover, as the court noted in Moreno Rios v. United States, 256 F.2d 68 (1st Cir. 1958), "the maxim ... is pretty weak when applied to acts of Congress enacted at widely separated times." Id. at 71; see also Cipollone, 505 U.S. at 520 (remarking that " `the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier

18

one.' "(citation omitted)). The ADA was enacted 20 years after the FAA. Under the circumstances then of Congress's intent in adopting both the FAA and the ADA, we do not find the exclusio unius maxim helpful on the issue of federal preemption of aviation safety standards.

b. Absence of Federal-State Law Conflict

Another rationale for finding that federal law does not preempt state and territorial safety standards rests upon the observation that Congress directed the Administrator to prescribe "minimum standards" to promote safety. 49 U.S.C. S 44701.13 Because the federal standards are "minimum," some courts have determined that a common law duty of safety may be owed beyond the FAA regulations. See, e.g., In re Air Disaster at Lockerbie, Scotland, 37 F.3d 804, 815 (2d Cir. 1994); Cleveland, 985 F.2d at 1444-45; Sunbird Air Services, Inc. v. Beech Aircraft Corp., 789 F. Supp. 360, 362-63 (D. Kan. 1992); Holliday v. Bell Helicopters Textron, Inc., 747 F. Supp. 1396, 1401 (D. Haw. 1990). Indeed, as the District Court pointed out in its preemption analysis, some courts have concluded that the application of state standards would raise the level of air safety as a supplement to the federal regulations. See, e.g., Cleveland, 985 F.2d at 1445. After finding "nothing inconsistent with Congress' goal of maximum safety and common law claims," id. at 1443, the court in Cleveland compared the state common law duties and the federal regulatory framework to determine whether there was an actual conflict. Id. at 1444-45. Finding no conflict between state and federal law, it found that the state common law action was not preempted. Id. at 1445.

_____

13. 49 U.S.C. S 44701(a)(5) provides:

> The Administrator of the Federal Aviation Administration shall promote safe flight of civil aircraft in air commerce by prescribing--
>
> ...
>
> (5) regulations and minimum standards for other practices, methods, and procedure the Administrator finds necessary for safety in air commerce and national security.

(emphasis added).

We have a problem with applying the type of analysis employed in Cleveland to determine that there is no federal preemption of aviation safety. First, as we demonstrate in Part III.A.1, there is no gap in the federal standards to fill with a state common law standard. The S 91.13(a) prohibition of "careless or reckless" operation of an aircraft occupies the apparent void beyond the specified "minimum" standards. Therefore, because the Administrator has provided both general and specific standards, there is no need to look to state or territorial law to provide standards beyond those established by the Administrator.

Moreover, as the First Circuit noted in French, the lack of a conflict between federal standards and state law is irrelevant. The court in French remarked that the absence of a conflict was "beside the point." "So long as occupation of an envisioned field was intended, `any state law falling within th[e] field is pre-empted.' . . . The federal interest necessarily predominates, rendering states impotent to act." 869 F.2d at 6 (quoting Silkwood, 464 U.S. at 248); see also Morales, 504 U.S. at 387 (holding that "[t]he pre-emption provision [of the ADA] ... displace[s] all state laws that fall within its sphere, even including state laws that are consistent with . . . substantive requirements."). In such instances, "the state statute must yield to the force of federal law . . . , notwithstanding that it is constructed upon values familiar to many and cherished by most, and notwithstanding that it may fit neatly within or alongside the federal scheme." French, 869 F.2d at 6.

As a consequence, in a federally preempted area, the question whether state or territorial law conflicts with federal law is a pointless inquiry. See id. If Congress has preempted a field -- whether it be expressly or by implication -- state laws attempting to regulate within that field "will be invalidated no matter how well they comport with substantive federal policies." L. TRIBE , AMERICAN CONSTITUTIONAL LAW S 6-27 at 497 (2d ed. 1988); see also Silkwood, 464 U.S. at 248.

c. The Savings and Insurance Clauses

The FAA's savings clause provides that: "A remedy under this part is in addition to any other remedies provided by

20

law." 49 U.S.C. S 40120(c). The insurance clause requires that airlines maintain liability insurance "for bodily injury to, or death of, an individual ... resulting from the operation or maintenance of the aircraft." 49 U.S.C. S 41112(a). These two sections have been interpreted to mean that state safety standards are not preempted because Congress provided for compensation of injured persons. See, e.g., Hodges, 44 F.3d at 338 & n.7; see also Cleveland, 985 F.2d at 1442 (collecting cases in which courts relied on the savings clause to find no preemption of state common law).

These two sections do demonstrate that Congress intended to allow for compensation of persons who were injured in aviation mishaps. As we point out in our answer to the second part of the certified question, however, we do not find that state and territorial law remedies are preempted, only the standards of care for the safe operation of aircraft. For that reason, the inclusion of the savings and insurance clauses in the FAA is not inconsistent with our decision. Their inclusion as a part of the FAA is in fact compatible with our determination that state and territorial damage remedies are preserved.

d. Reserved State Power

Finally, as the District Court pointed out, some courts have found that federal law does not preempt state law in the field of aviation safety because they believe that states may regulate aviation safety under their traditional police powers. See, e.g., Cleveland, 985 F.2d at 1443; Kiefer v. Continental Airlines, Inc., 882 S.W.2d 496, 505 (Tex. App. 1994). However, whether the states may invoke their police powers depends on whether the field is federally preempted. See Cleveland, 985 F.2d at 1441 ("Consideration of issues arising under the Supremacy Clause `start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress'.") (quoting Cipollone, 505 U.S. at 516 (citation omitted); accord Hodges, 44 F.3d at 338.

As a result, because we have found that the entirefield of aviation safety is federally preempted, we need not consider whether the regulation of aviation safety falls

21

within the traditional police powers of the states and territories.

## C. No Federal Preemption of State and Territorial Remedies

Even though we have found federal preemption of the standards of aviation safety, we still conclude that the traditional state and territorial law remedies continue to exist for violation of those standards. Federal preemption of the standards of care can coexist with state and territorial tort remedies. For instance, in Silkwood, the Supreme Court held that a state tort remedy can coexist with federal preemption of the regulation of nuclear safety. 464 U.S. at 256. The Court in Silkwood held that "insofar as damages for radiation injuries are concerned, preemption should not be judged on the basis that the Federal Government has so completely occupied the field of safety that state remedies are foreclosed, but on whether there is an irreconcilable conflict between the federal and state standards or whether the imposition of a state standard in a damages action would frustrate the objectives of the federal law." Id.

In the present case, we find no "irreconcilable conflict between federal and state standards." Nor do we find that "imposition of a [territorial] standard in a damages action would frustrate the objectives of the federal law." Quite to the contrary, it is evident in both the savings and the insurance clauses of the FAA that Congress found state damage remedies to be compatible with federal aviation safety standards. The savings clause provides that "a remedy under this part is in addition to any other remedies provided by law." Clearly, Congress did not intend to prohibit state damage remedies by this language. Moreover, the insurance clause requires airlines to maintain liability insurance "for bodily injury to, or death of, an individual . . . resulting from the operation or maintenance of the aircraft." 49 U.S.C. S 41112(a). Congress could not have intended to abolish a damage remedy for injury or death if it required airlines to maintain insurance coverage to recompense injured persons. Furthermore, there is no federal remedy for personal injury or death caused by the operation or maintenance of aircraft to be found in the FAA itself. See In re Mexico City Aircrash, 708 F.2d 400, 408

22

(9th Cir. 1983). We must conclude, therefore, that the insurance proceeds are to be available as a remedy under state or territorial law. See Elsworth v. Beech Aircraft Co., 691 P.2d 630, 634-35 (1984) ("[T]here is nothing inherently inconsistent in the proposition that even if the federal government has entirely occupied the field of regulating an activity a state may simultaneously grant damages for violation of such regulations.")

The Court in Silkwood recognized nevertheless that an inherently regulatory effect is created by a state law damage remedy. 464 U.S. at 258. Accord Cipollone, 505 U.S. at 521; Cleveland, 985 F.2d at 1441. The Silkwood Court observed, however, that Congress had decided to "tolerate whatever tension there was" between finding the standard of care preempted and allowing state remedies, and that the "regulatory consequence [of an award of damages] was something that Congress was quite willing to accept." 464 U.S. at 256. Similarly, with aviation safety, in light of the Silkwood decision, we cannot infer from Congress's intent to federally preempt the standards of care, that Congress also intended to bar state and territorial tort remedies. See id. Indeed, as the Seventh Circuit Court of Appeals stated in Bieneman v. City of Chicago:

> The identity of common law damages and penalties for disobedience to substantive rules could lead to a conclusion that where a state is forbidden to alter the substantive rule, it is forbidden to award damages. Silkwood v. Kerr-McGee rejects this equation, however. . . . Notwithstanding the argument (indeed the truism) that an award of hefty compensatory and punitive damages is a method of regulating safety, the Court concluded that federal law does not preempt common law remedies concerning nuclear safety.

864 F.2d 463, 472 (7th Cir. 1988). See also Elsworth, 691 P.2d at 635 (holding that "in spite of the fact that federal law may have completely occupied the field of regulation of aircraft safety . . . remedies that a party may have under state law" are not abridged by the FAA); cf. TMI III, 67 F.3d at 1107 (holding that even though federal law controlled the standard of care in the regulation of nuclear safety, the

23

question whether a damages remedy for injured persons was federally preempted was a separate consideration).

IV. Conclusion

Because we find Congress's intent to regulate interstate and international air safety to be unambiguous, we hold that state and territorial standards of care in aviation safety are federally preempted. Moreover, we find that state and territorial tort remedies can coexist with federal standards of care for air safety; thus, plaintiffs, who are injured during a flight as a result of the violation of federal air safety standards, may have a remedy in state or territorial law.

We will remand this case to the District Court to evaluate whether the evidence on standards of care and the instructions given to the jury conformed to the federal aviation safety standards as we have described them, and for such further proceedings as it may deem necessary.

A True Copy:
Teste:

>Clerk of the United States Court of Appeals
>for the Third Circuit