COLE,
concurring in part and dissenting in part.
Regarding all but one of the claims presented in this appeal, I concur in the judgment of the Court. However, I write separately to clarify my concerns with Greene’s manufacturing defect claim and to respectfully dissent from the majority’s opinion regarding Greene’s failure to warn claim.
I.
A product failure cannot always be equated to a product defect, and this, as I see it, is the fatal flaw in Greene’s argument. First, to prevail on a manufacturing defect claim under a strict liability theory, the plaintiff must show that a manufacturing error, resulting in an unreasonably dangerous condition, was the substantial cause of the plaintiffs injury. Worldwide Equip., Inc. v. Mullins, 11 S.W.3d 50, 55-58 (Ky.App.1999). As the majority notes, Greene presented four items of evidence in support of her claim that a vertical gyroscope failure was the probable cause of the crash: (1) Mr. Greene’s statement immediately prior to the crash that his “gyro just quit”; (2) evidence that in the six-month period before the crash, several gyroscopes in PHI’s helicopters, including in the one piloted by Mr. Greene, were re *796 placed; (3) evidence that the crash kinematics did not match what the helicopter’s instruments were reading at the time of the crash; and (4) Herlihy’s testimony that, in his opinion, the vertical gyroscope failed on the night of the accident because, based on the remains of the ADI face plate and light panels from the crash, a vertical gyroscope failure was more likely than a wiring failure between the gyroscope and its ADI, or a failure of the ADI. With the exception of the second item of evidence, I find that the sum of Greene’s circumstantial evidence was sufficient to support the jury’s conclusion that the vertical gyroscope failed.
However, Greene presented no evidence showing that this failure was the result of a manufacturing defect. Because the gyroscope was destroyed in the crash, Greene could not examine it for a manufacturing defect. Her argument has essentially been: the gyroscope failed and therefore there must have been a manufacturing defect. This type of res ipsa loqui-tur reasoning has been embraced by Kentucky courts in manufacturing defect cases. See Embs v. Pepsi-Cola Bottling Co. of Lexington, Kentucky, Inc., 528 S.W.2d 703, 706 (Ky.1975) (reversing a dismissal where the plaintiff was injured by an exploding beverage bottle, the debris of which was unrecoverable, because bottles do not ordinarily explode in the course of normal handling); c.f. Perkins v. Trailco Mfg. and Sales Co., 613 S.W.2d 855, 858 (Ky.1981) (reversing a dismissal and noting that circumstantial evidence was enough to prove a defect where a new tractor trailer collapsed while it was being properly used). Nevertheless, to be entitled to this res ipsa loquitur-type inference, the plaintiff has the burden of showing that the product malfunctioned in a way unlikely to occur if the product had been properly made, and that no outside forces caused the malfunction. See Prosser, Wade & Schwartz, Torts, 767 (9th ed.1994); Dan B. Dobbs, The Law of Torts, 1003 (2001). Unfortunately for Greene, she did not show that it was out of the ordinary for a gyroscope to fail. Goodrich presented evidence that vertical gyroscopes are not replaced on any set time table. Rather, gyroscopes are replaced “on condition,” meaning that they are replaced once they show a discrepancy or failure. These discrepancies or failures occur during flight, and usually, pilots compensate by relying on the other gyroscopes in the helicopter. The uncontro-verted evidence showed that failures occur and that pilots are trained never to rely solely on one gyroscope for this reason. Given this, Greene has not proven that a gyroscope failure is an unexpected event such that a res ipsa loquitur inference would be warranted. Accordingly, there was no evidence that the gyroscope failure was a “manufacturing defect,” and the jury’s outcome to the contrary must be set aside.
Although the majority goes further to say that the gyroscope failure may not have caused the crash, I am not convinced that a gyroscope failure, while usually a manageable event, did not prove fatal in the unique circumstances of this crash. It may be that gyroscopes in certain circumstances are unavoidably unsafe products, see Restatement (Second) of Torts § 402A, Comment K, however, all the evidence presented indicates that users are aware of their unsafe attributes. Without showing a probability that Mr. Greene’s gyroscope was defective as compared to other gyroscopes produced by Goodrich, Greene’s claim must fail.[8] Therefore, I *797 respectfully concur in the result reached by the majority as to Goodrich’s motion for judgment as a matter of law.
II.
I now turn to Greene’s cross-appeal regarding her failure to warn claim. The majority opinion affirms the district court’s grant of summary judgment to Goodrich, stating that Greene’s state law failure to warn claim is preempted by federal law. A federal law may preempt a state law either expressly or implicitly. Garcia v. Wyeth-Ayerst Labs., 385 F.3d 961, 965 (6th Cir.2004). When Congress enacted the Federal Aviation Act (“FAA”), it chose several specific areas in which to explicitly prohibit the States from enacting regulations relating to aviation safety. See 49 U.S.C. § 41713(b)(1) (preempting the States from enacting regulations regarding the “price, route, or service of an air carrier that may provide air transportation”); 49 U.S.C. § 44703(i)(2) (preempting the States from enacting regulations imposing liability on any person for “furnishing or using records” of employment); 49 U.S.C. § 44921(f)(2) (preempting the States from regulating when a flight deck officer may carry a firearm). I can find no congressional language in the FAA which would expressly preempt Greene’s state law-based failure to warn claim in this case.
When Congress fails to use express preemption language, a federal law may still preempt state law if the federal law thoroughly occupies the legislative field in question. This Court has previously held that:
Implied preemption occurs if a scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, if the Act of Congress touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject, or if the goals sought to be obtained and the obligation imposed reveal a purpose to preclude state authority ... a court must begin with the assumption that a state law is valid and should be reluctant to resort to the Supremacy Clause.
Garcia, 385 F.3d at 965.
Under this implied preemption reasoning, the district court determined that federal law preempted state law on the issue of aviation safety duties. The district court cited Abdullah v. American Airlines, Inc., 181 F.3d 363 (3d Cir.1999) in support of this proposition. As the majority notes, the Third Circuit in Abdullah did a close study of the legislative history of the FAA. In Abdullah, passengers who were injured during a flight sued the airline for operating the aircraft in a manner that resulted in severe turbulence. 181 F.3d at 365. The court stated that:
To effectuate this broad authority to regulate air safety, the Administrator of the FAA has implemented a comprehensive system of rules and regulations, which promotes flight safety by regulating pilot certification, pilot pre-flight duties, pilot flight responsibilities, and flight rules.
Id. at 369. The court, noting that federal regulations already exist which lay out the appropriate standard of care that was *798 owed to passengers by pilots and flight crews, concluded that the FAA preempted any standards of care that the State may impose on flight operators. Id. at 371. To the extent that we choose to rely on Ab-dullah as persuasive authority, I believe that the facts of the instant ease are readily distinguishable. Abdullah can truly only be relied on for the limited proposition that a State’s standard of care for aviation personnel is preempted by the FAA. The situation before us is not like that in Abdullah, because in this case, there are no federal regulations which lay out the exact standard of care. Therefore, I would not expand the proposition in Ab-dullah to apply to commercial enterprises that manufacture aviation equipment.
Furthermore, this Court has previously chosen to apply preemption narrowly with regards to the FAA. In Gustafson v. City of Lake Angelus, 76 F.3d 778, 786 (6th Cir.1996), we stated that Congress had preempted local law regarding navigable airspace, noise control, and aircraft safety, but went on to hold that the FAA did not preempt local regulations/ordinances regarding ground space to be used for aircraft landing sites. Id. at 789. Thus, our circuit has traditionally shown a proper amount of restraint and caution before finding State and local laws preempted by federal law. Under this regime, I cannot assume that the FAA implicitly preempts any State or common law-imposed duties here. Admittedly, the FAA is involved in overseeing the quality control of certain aviation equipment; however, neither the appellant nor the majority have proffered any reason why a State’s more stringent duty of care in the failure to warn context could not supplement rather than frustrate the FAA. Consequently, I respectfully dissent from the majority’s conclusion that Greene’s failure to warn claim was properly dismissed.

. I recognize the difficulty of proving a manufacturing defect in a situation where the product is destroyed. This is why the res ipsa loquitur inference could prove important in many cases. Here, however, there is an addi *797 tional complication, because the product, by all accounts, is sometimes expected to fail. If Greene had presented evidence on the expected rate of failure in gyroscopes, she perhaps might have been able to show that a user would not have had any expectation that a relatively new gyroscope would fail, and therefore that a manufacturing defect was the likeliest possibility. Greene may have an argument that Goodrich has the burden to collect and provide consumers with information regarding the gyroscope's failure rate. See infra.