BEA, Circuit Judge,
concurring:
I agree the district court’s order dismissing the complaint should be reversed, but to another result. This is because I read Montalvo v. Spirit Airlines, 508 F.3d 464 (9th Cir.2007), quite differently than does the majority. In Montalvo there were two claims on appeal: (1) a claim the airline negligently failed to warn passengers — including the plaintiffs — of the risk of deep vein thrombosis, caused by prolonged sitting during flight, and (2) a claim the airline negligently configured placement of the airplane seating so to cramp passenger movements and lead to the onset of deep vein thrombosis. The Montal-vo court affirmed the district court’s order dismissing the plaintiffs’ failure to warn claim on the ground such claims are preempted by the Federal Aviation Act (“FAA”) due to pervasive federal regulations governing airplane warnings. The court reversed the district court’s order dismissing the plaintiffs’ negligent seating configuration claim and remanded that claim to the district court so it could analyze whether seating configuration affects ticket prices, which would in turn render the claim preempted under the Airline Deregulation Act.
The majority concludes that had the Montalvo panel thought the negligent seating configuration claim was preempted under the FAA, and not just possibly preempted under the Airline Deregulation Act, it would have dismissed that claim outright on FAA preemption grounds instead of remanding it. Rather, says the majority, because the Montalvo court did not dismiss the negligent seating configuration claim as preempted by the FAA, negligent seat design claims generally are not preempted by the FAA. And, if negligent seat design claims are not preempted by the FAA, how can negligent stairway design claims be preempted? Neither seat *813 design nor stairway design are specifically called out by federal regulations in any way similar to passenger safety warnings.
I part with the majority as to Montalvo at two points. First, in the majority’s major premise: that airline seat configuration and seat design are analogous for purposes of determining whether federal preemption exists. Second, that Montalvo directs an implication that absent “pervasive” federal regulations on seat design, no federal standard of care exists.
First, that airline seat configuration and seat design are not analogous and should be subject to different liability rules makes some sense. Airline seat configuration is determined by the airline; seat design is determined by the manufacturer. The airlines have different business locations; they fly intrastate as well as interstate. They can expect to be subject to local notions of passenger safety. On the other hand, airplane manufacturers design and manufacture similar seats for airplanes sold throughout the country and overseas; they lack knowledge of precisely where the airplane will end up or how the airline buyer will configure the seats’ placement. Airplane manufacturers should be able to rely on a uniform rule for proper seat design and construction.
Second, in Montalvo the plaintiffs brought not only a claim for negligent configuration, but also one for negligent design of the seats themselves. The district court dismissed the negligent design claim as preempted by the FAA — and that ruling was not appealed. See In re Deep Vein Thrombosis Litig., No. 04-1606, 2005 WL 591241 at *14 (N.D.Cal. Mar.11, 2005).
Accordingly, contrary to the majority’s view that Montalvo implicitly decided there was no federal preemption of the negligent seat design claim, the lesson of Montalvo is that the plaintiffs thought so little of the idea that federal law did not preempt state theories of negligent design liability that they chose to let dead dogs lie by not even attempting to resuscitate that claim by appeal. But note, there was no more “pervasive” federal regulation of seat design than there is of stairway bannister design.
Even if it did not decide the precise issue before us, however, Montalvo still provides the framework by which we analyze preemption of state law tort actions against airlines, and I think the solution to this case lies in Montalvo’s plain text: “[w]e adopt the Third Circuit’s broad, historical approach [in Abdullah v. Am. Airlines, Inc., 181 F.3d 363 (3d Cir.1999)].” Montalvo, 508 F.3d at 468.
Abdullah involved a negligence action for physical injuries sustained by several airline passengers during severe in-flight turbulence; the passengers alleged the airline failed to give them adequate warning of the oncoming turbulence. There, the Third Circuit held the FAA preempts only the standard of care in state law tort personal injury causes of action, and replaces each state’s standard of care with a single federal one. 181 F.3d at 371. This preemption applies only to the standard of care: the remaining tort elements of breach, causation, and damages are each governed by state law. Id. at 375.[1]
*814 The Abdullah and Montalvo courts were faced with areas in which the FAA had relevantly and pervasively regulated, such as airline warnings, and they found state law causes of action preempted due to those relevant, pervasive regulations. Not so here: in the field of aircraft design regulation, the FAA directs only the conditions under which the government may grant an aircraft design a “certificate” that permits production; the FAA does not prescribe general standards the manufacturer must follow to exercise reasonable care in designing a safe aircraft. See 14 C.F.R. § 21.21 (providing the government may not issue a “certificate” allowing production unless the FAA Administrator finds “no feature or characteristic” makes the plane “unsafe for the category [of aircraft] for which certification is requested”) [2]; 14 C.F.R. § 25.810 (providing that if airplane stairs also serve as an emergency exit, the government may not grant a “certificate” unless the manufacturer shows the stairs will function in case of an emergency).
Thus, the question here is whether the Abdullah rule, which establishes federal preemption of state standards of care in state law personal injury actions against airlines, applies to negligent design actions in which the FAA has not promulgated relevant regulations describing the particular obligations of the airline. The majority holds the Abdullah rule does not apply to such a situation, and that state law standards of care govern.[3] Some courts in the Third Circuit have reached a conclusion opposite to the majority’s, and have interpreted Abdullah to hold that failure to allege a federal standard of care that the carrier allegedly breached is a defect fatal to the complaint. See, e.g., Landis v. U.S. Airways, No. 07-1216, 2008 WL 728369 (W.D.Pa. Mar.18, 2008) (“Because the standard of care imposed by state common law is preempted by the FAA, and Landis has not otherwise set forth a federal standard of care alleged to have been breached, her claims against U.S. Airways are properly dismissed.”).[4]
*815 However, as I read Abdullah, expressly adopted by Montalvo, 508 F.3d at 468, the court contemplated district courts would allow a factfinder to consider relevant FAA regulations and, to the extent those regulations are unclear or nonexistent, expert testimony of common industry practices, as relevant evidence of reasonable care under the circumstances, so the fact-finder might determine the applicable standard of care. See id. at 371; see also, e.g., Elassaad v. Independence Air, Inc., No. 05-2328, 2008 WL 3895566 (E.D.Pa. Aug.20, 2008) (dismissing, under Abdullah, a claim against an airline for negligent failure to assist a passenger, on the grounds the plaintiff did not show an absence of relevant FAA regulations and “has not pointed to case law or expert testimony” that the standard of care required the defendant “to offer assistance to the plaintiff’). Indeed, in Abdullah the FAA had issued regulations relevant to the standard of care — but the court nevertheless found “expert testimony on various aspects of aircraft safety may be helpful to the jury” in identifying and applying the correct standard of care created by those federal regulations.[5] Id.
*816 Here, we have a negligence[6] case in which there are no regulations that dictate whether an airplane staircase must have one or two handrails. As a negligence case, reasonable care applies, and expert testimony (or FAA regulations, if there were any) should be admitted so a factfin-der might determine what reasonable care means in airplane design at a nationwide level. For instance, an expert may testify all other commercial passenger airplane staircases designed in the United States use two handrails; based on this testimony, a factfinder might well conclude that using only one handrail was unreasonable and, thus, negligent.
This reading of Montalvo and Abdullah makes more sense to me than the majority’s. Without federal preemption of the standard of care in personal injury tort actions, airlines and airplane manufacturers would be subject to the standard of care in whichever state their planes happen to be in (or over) when the injury occurs; the majority’s rule essentially means airlines and airplane manufacturers must prepare for fifty kinds of liability. With federal preemption of the standard of care, both airlines and airplane manufacturers, on the one hand, and passengers, on the other, would have some manageable guidance regarding duties owed. Further, by allowing the states to determine the elements of breach,[7] causation,[8] and, most importantly, damages,[9] the Abdullah approach allows states to maintain individual policy priorities in line with Congress’s intent to preserve state law remedies.
Accordingly, I would hold Montalvo requires us to remand this case to the district court to allow a factfinder to consider evidence to determine the federal standard of care for negligent stairway design, and state standards for breach, causation, and damages.

. The Supreme Court approved a framework similar to this in the nuclear power plant safety regulation context. See Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984). The Silk-wood Court held that because, as here, the Atomic Energy Act included language indicative of congressional intent to preserve state law personal injury actions based on violations of nuclear power plant safety standards, regulations promulgated by the Nuclear Regulatory Commission were the “exclusive authority” regarding "[nuclear plant] safety standards,” but Congress did not otherwise preempt *814 "state tort remedies " such as punitive damages. Id. at 253, 104 S.Ct. 615 (emphases added).

.This court has explained that 14 C.F.R. § 21.21 merely requires the Federal Aviation Administrator to certify the plane is not unsafe based on engineering data provided by the manufacturer which shows the plane meets all of the other regulations promulgated under the FAA for airplane design; it does not provide an independent general standard to judge the safety of an airplane. See GATX/Airlog Co. v. United States, 286 F.3d 1168, 1171 (9th Cir.2002) ("The first stage of[the airplane approval] process is type certification, in which airplane manufacturers seek approval of new aircraft designs. Under federal regulations, aircraft manufacturers must analyze and test their new aircraft designs. Based on the resulting engineering and test data, the FAA then determines the airworthiness of those designs [pursuant to 14 C.F.R. § 21.21). If the manufacturer demonstrates that the design complies with federal regulations, the FAA issues a type certificate.").

. Contrary to the majority’s position, neither Abdullah nor Montalvo contemplated state standards of care would apply in any circumstance. See Abdullah, 181 F.3d at 367 ("[W]e hold that federal law establishes the applicable standards of care in the field of air safety, generally, thus preempting the entire field from state and territorial regulation.”).

. The majority asserts that a reading of Mon-talvo contrary to its own would be "in tension” with our en banc ruling in Charas v. Trans World Airlines, Inc., 160 F.3d 1259 (9th Cir.1998). Respectfully, I do not see how this can be the case. Charas dealt with preemption of airline passenger personal injury negligence claims, such as those for injuries due to wayward drinks carts and falling luggage, under the Airline Deregulation Act — a different statute than the FAA, the statute at issue here. We concluded that Congress intended airline "services” to be economic in nature for pre *815 emption to apply under the Airline Deregulation Act. In the present case, unlike Charas and Montalvo, there is no contention on appeal that the plaintiffs claims are preempted by the Airline Deregulation Act.

. The majority cites Erie R.R. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), for the proposition there cannot be a federal standard of care for airline personal injury torts because, in diversity cases, "[tjhere is no federal general common law.” Erie was a railroad accident case that involved only state common law negligence; it involved no claim of preemption based on any Interstate Commerce Commission regulations regarding the design of railcar door latches or how to keep railcar doors from swinging open and hitting nearby pedestrians. Here, on the other hand, we have a federal statute (the FAA) that we have held partly displaces state law through preemption of personal injury tort standards of care. Abdullah, 181 F.3d at 375; Montalvo, 508 F.3d at 468. In such a case, Erie does not apply. See, e.g., Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 176, 63 S.Ct. 172, 87 L.Ed. 165 (1942) (“[T]he prohibition of a federal statute may not be set at naught, or it benefits denied, by state statutes or state common law rules. In such a case our decision is not controlled by [the Erie rule].”). Rather, a federal court hearing the dispute may — indeed, must — create gap-filling rules to effect the federal statute involved. See, e.g., Ernest A. Young, Preemption and Federal Common Law, 83 Notre Dame L. Rev. 1639, 1642-43 (2008) ("Federal common law comes in a number of different forms.... [W]hen Congress leaves gaps in federal statutes — when it fails to specify a measure of damages for new federal claims, for example — it means for the courts to fill in those gaps through federal common lawmaking.”).
What is more, a state court addressing our issue in a case with no diversity of citizenship would also be required to determine the relevant federal standard of care — precisely the kind of analysis that takes place, for instance, when a state court adjudicates an action under the Federal Employers' Liability Act. See, e.g., Texas & P. Ry. Co. v. Younger, 262 S.W.2d 557, 559-560 (Tex.Civ.App.1953) ("While suits under the Federal Employers' Liability Act may be maintained in appropriate courts of any state, [the state court must apply] the laws of the United States and not ... state laws.”).
In other words, the majority is incorrect to assume the crucial question is simply whether our jurisdiction lies in diversity. See Martha A. Field, Sources of Law: The Scope of Federal Common Law, 99 Harv. L. Rev. 881, 911 n. 140 (1986) ("Occasionally, courts or commentators carelessly or mistakenly suggest that Erie’s boundaries relate to the jurisdictional basis of the particular lawsuit, stating that Erie applies in diversity cases in federal courts. [Rather], ‘it is the source of the right sued upon, and not the ground on which federal jurisdiction over the case is founded, which determines the governing law.’ ”) (citations omitted, emphasis in original); see also Maternally Yours v. Your Maternity Shop, 234 F.2d 538, 540 n. 1 (2d Cir.1956) ("[T]he Erie doctrine applies, whatever the ground for federal jurisdiction, to any issue or claim which *816 has its source in state law. Likewise, the Erie doctrine is inapplicable to claims or issues created and governed by federal law, even if the jurisdiction of the federal court rests on diversity of citizenship.”) (citations omitted).

.Although this action was originally brought by the injured plaintiff under a strict liability theory, our case stems from a third party complaint by Midwest Express seeking indemnity against Fairchild Dornier for negligent design of the aircraft. Midwest Express’s theory is that Fairchild Dornier failed to employ reasonable care in designing the aircraft staircase because, according to the allegations of the complaint, unlike most other airplanes, the staircase here has one handrail instead of two.

. Whether the failure properly to design is excusable under the circumstances.

. Whether the damages plaintiff claims may be offset totally or partially by the plaintiff's contributory or comparative fault.

. Whether damages caps should be imposed for particular non-economic claims and whether punitive damages should be allowed.