**Kenneth CURTIN, Plaintiff,**

**v.**

**The PORT AUTHORITY OF NEW YORK and New Jersey and Delta Airlines, Inc., Defendants.**

**No. 01 CIV 445(WHP).**

United States District Court, S.D. New York.

Feb. 8, 2002.

Kenneth Bornstein, Esq., Bornstein & Emanuel, P.C., Garden City, NY, for Plaintiff.

Jeffrey J. Ellis, Esq., Quirk & Bakalor, P.C., New York City, for Defendants.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

On December 22, 2000, plaintiff filed an action in New York Supreme Court, Bronx County alleging that defendants' negligence in violation of state common law caused his personal injuries. On January 19, 2001, defendant Delta Airlines, Inc. ("Delta"), with the consent of defendant Port Authority of New York and New Jersey (the "Port Authority"), filed a notice of removal with this Court based on federal question jurisdiction. Curtin moves to remand this action for lack of subject matter jurisdiction, asserting that neither federal question nor diversity jurisdiction exists. For the reasons set forth below, plaintiff's motion for remand is denied.

### Background

Curtin alleges that on March 19, 2000, during an emergency evacuation of Delta flight number 1971 at LaGuardia Airport, he was injured when he was "precipitated to the ground while sliding down the exit ramp/slide which was set up directly outside the emergency exit door." (Verified Complaint ("Compl.") ¶¶ 46, 47.) Curtin asserts that defendants were careless and negligent in their supervision, oversight, and control of emergency evacuation procedures, and in their instructions and assistance to passengers during the evacuation. (Compl.¶¶ 49–59.) The complaint does not cite any specific statute as a basis for the claims.

Defendants removed this action to federal court on the basis of the Federal Aviation Act of 1958 (the "FAA"), 49 U.S.C. § 40101 *et seq.*, asserting that the statute "implicitly preempts State law standards governing aviation safety, flight operations, emergency evacuation, and flight crew procedures," standards that are central to Curtin's complaint. (Notice of Removal ("Notice") ¶ 2.) Additionally, defendants contend that plaintiff's claims require the resolution of substantial questions of federal law: whether a carrier that complies with federal aviation standards is immune from liability and whether state regulation of flight operations of a carrier engaged in interstate air commerce is an unconstitutional burden on interstate commerce. (Notice ¶ 2.)

In his remand motion, Curtin asserts that no federal question jurisdiction exists because the FAA does not preempt state law negligence claims. (Pl.'s Mem. at 8–10.) While acknowledging a split in the circuits regarding FAA preemption, Curtin maintains that the FAA's legislative history does not preclude a state law negligence claim arising from an aircraft emergency on the ground. (Pl.'s Mem. at 9–10.)

Delta and the Port Authority oppose remand on two grounds. First, they assert the need for "interpretive uniformity and predictability" with respect to standards that determine a plaintiff's right to recovery. (Defs.' Memorandum of Law in Opposition ("Opp.Mem.") at 2 (citing *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 862, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987).)) Second, defendants contend that the FAA implicitly preempts the field of aviation safety. (Opp. Mem. at 3). In the same vein, defendants assert that the Airline Deregulation Act's express preemption clause does not limit the scope of the FAA's implied preemption of the field of aviation safety. (Opp. Mem. at 3, 9.)

### Discussion

■ Defendants argue that FAA regulations impliedly preempt the field of aviation safety, including the standards that

determine the airline carrier's duty of care. (Opp. Mem. at 9.) Thus, this Court must determine whether the FAA impliedly preempts the field of aviation safety. If so, a negligence claim based on events occurring during an emergency airline evacuation is subject to the FAA's statement of a carrier's duty of care—a question of federal law.

■ Removal statutes are construed narrowly and all uncertainties are resolved in favor of remand in order to promote the goals of federalism, restrict federal court jurisdiction, and support the plaintiff's right to choose the forum. *See, e.g., Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Somlyo v. J. Lu–Rob Enters., Inc.,* 932 F.2d 1043, 1045–46 (2d Cir.1991). The party seeking to preserve removal, not the party moving for remand, has the burden of proving federal removal jurisdiction. *See Grimo v. Blue Cross/Blue Shield,* 34 F.3d 148, 151 (2d Cir.1994); *Pan Atlantic Group, Inc. v. Republic Ins. Co.,* 878 F.Supp. 630, 637 (S.D.N.Y.1995).

■ Generally, statutory federal question jurisdiction extends to cases in which a federal question appears on the face of a well-pleaded complaint. *See Louis & Nashville R.R. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). There are two broad exceptions to the well-pleaded complaint rule: (1) when the complaint is "artfully pleaded" to avoid making explicit reference to what is in fact a federal claim; and (2) when the otherwise applicable state law has been "completely preempted" by federal law. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Travelers Indemnity Co. v. Sarkisian,* 794 F.2d 754, 760 (2d Cir.1986). In addition, the Supreme Court has held that federal question jurisdiction also exists when "federal law creates the cause of action" or "the plaintiffs' right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

■ Preemption is a doctrine grounded in the Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2, which the Supreme Court has interpreted to provide that any state law conflicting with a valid federal law is "without effect." *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). To avoid "unintended encroachment on the authority of the States, however, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption." *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). The assumption that the historic police powers of the states are not preempted by a federal statute is overcome on a showing that such a result is the "clear and manifest purpose of Congress." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (citation omitted). The "ultimate touchstone" of preemption analysis is the purpose of Congress. *Cipollone,* 505 U.S. at 516, 112 S.Ct. 2608.

■ Preemption may be express or implied from the structure and purpose of a statute. *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Implied preemption may be found in two ways. The first type of implied preemption is field preemption, which occurs in cases where the federal regulatory scheme "is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Gade v. National Solid Wastes Mgmt. Ass'n,* 505 U.S. 88, 98, 112 S.Ct.

2374, 120 L.Ed.2d 73 (1992) (citation omitted). The second type of implied preemption is conflict preemption. Conflict preemption arises where (1) "compliance with both federal and state regulations is a physical impossibility" or (2) the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade*, 505 U.S. at 98, 112 S.Ct. 2374 (citations omitted).

The primary purpose of the FAA was the creation of the Federal Aviation Administration, the agency that promulgates regulations of the aviation industry. As originally drafted, the FAA did not contain an express preemption provision, but it included a sovereignty clause and a saving clause reflecting federalism concerns. The sovereignty clause states that "the Government of the United States shall have exclusive jurisdiction over the airspace of the United States." 49 U.S.C. § 40103. The saving clause provides that "[n]othing ... in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 49 U.S.C. § 1506.

Regulations promulgated under the FAA are the central source of federal statutory control. *See* 49 U.S.C. § 40101(a)(1)-(3); 49 U.S.C. § 40113. These Federal Aviation Regulations ("FARs"), codified at Title 14 of the Code of Federal Regulations, prescribe standards of care for the aviation industry. The general standard of care is that "[n]o person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." 14 C.F.R. § 91.13(a). In addition, FARs set forth an array of specific safety standards governing emergency evacuation procedures. *See, e.g.*, 14 C.F.R. § 121.291 (Demonstration of Emergency Evacuation Proce-

dures); 14 C.F.R. § 121 Appendix D (Criteria For Demonstration of Emergency Evacuation Procedures); 14 C.F.R. § 121.309 (Emergency Equipment); 14 C.F.R. § 121.310 (Additional Emergency Equipment); 14 C.F.R. § 121.397 (Emergency and Emergency Evacuation Duties); 14 C.F.R. § 121.417 (Crewmember Emergency Training); 14 C.F.R. § 121.557 (Emergencies: Domestic and Flag Carriers); 14 C.F.R. § 121.570 (Airplane Evacuation Capability); 14 C.F.R. § 121.571 (Briefing Passengers Before Take–Off).

In 1978, Congress amended the FAA with the Airline Deregulation Act, 49 U.S.C. § 41713, ("ADA"), an economic deregulation statute. To preclude state interference with federal deregulation, Congress expressly preempted the states from enacting or enforcing "[a]ny law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier ...." 49 U.S.C. § 41713(b)(1). In 1994, Congress enacted a second modification to the FAA, the General Aviation Revitalization Act. 103 Pub.L. No. 298 (1994). That Act protects the United States' light aircraft industry by precluding products liability lawsuits against manufacturers of aircraft or component parts that have been in service for more than eighteen years. Neither party asserts that the foregoing amendments to the FAA are relevant here.

The Supreme Court has addressed preemption and the scope of the FAA, but has not considered implied field preemption in the context of aviation safety. The Court held that by enacting the FAA and the Noise Control Act, Congress preempted the field of airport noise, and concluded that the "pervasive nature of the scheme of federal regulation of aircraft noise" evidenced Congress' implicit intent to preempt state laws governing noise control. *City of Burbank v. Lockheed Air*

*Terminal Inc.*, 411 U.S. 624, 633, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973). Notably, the Court found that the objectives of the FAA are safety and efficiency. *City of Burbank*, 411 U.S. at 638, 93 S.Ct. 1854.

■ In other contexts, the Supreme Court has addressed the interpretation of saving and preemption clauses as bases for ascertaining Congressional intent. The inclusion of a saving clause does not foreclose the possibility of implied preemption. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 870, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000) ("[T]he saving clause foresees— it does not foreclose—the possibility that a federal safety standard will pre-empt a state common-law tort action with which it conflicts."). Moreover, the presence of an express preemption clause in a statute does not necessarily bar the application of ordinary preemption principles. *Geier*, 529 U.S. at 867, 120 S.Ct. 1913 (Federal automobile safety statute granting manufacturers the discretion to install air bags that included both a saving clause and an express preemption provision preempted a state law tort claim alleging defective design for failure to install air bags.)

Those holdings reflect an evolution in the Supreme Court's view of preemption. In *Cipollone v. Liggett Group*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), the Court stated that "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." 505 U.S. at 517, 112 S.Ct. 2608. The Court clarified that holding in *Freightliner Corporation v. Myrick*, 514 U.S. 280, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995), by stating that "[a]t best, *Cipollone* supports an inference that an express preemption clause forecloses implied pre-emption: it does not establish a rule." 514 U.S. at 289, 115 S.Ct. 1483. *Freightliner* noted that "[t]he fact that an express defi-

nition of the pre-emptive reach of a statute 'implies'—i.e., supports a reasonable inference—that Congress did not intend to preempt other matters does not mean that the express clause entirely forecloses any possibility of implied preemption." 514 U.S. at 288, 115 S.Ct. 1483. Thus, *Cipollone* and *Freightliner* reflect incrementally increased acceptance of express and implied preemption in the same statute, leading up to the *Geier* decision's reconciliation of a saving clause with implied preemption.

The Second Circuit has not squarely addressed whether the FAA preempts state negligence claims related to safety, and none of the district court decisions in this Circuit that address the preemptive effect of the FAA compels remand in this action. ·Many decisions by the district courts in this circuit conclude that the FAA does not preempt state law claims. Those decisions almost uniformly base their analyses solely on the ADA's express preemption provision. *See, e.g., Luciano v. Trans World Airlines, Inc.*, No. 96–CV– 3999 (FB), 1998 WL 433808, at *3 (E.D.N.Y. July 28, 1998); *Peterson v. Continental Airlines, Inc.*, 970 F.Supp. 246 (S.D.N.Y.1997); *Trinidad v. Am. Airlines, Inc.*, 932 F.Supp. 521 (S.D.N.Y.1996); *Rombom v. United Air Lines, Inc.*, 867 F.Supp. 214 (S.D.N.Y.1994). That provision precludes state regulation of prices, routes or services. *See* 49 U.S.C. § 41713.

More recently, in *Sakellaridis v. Polar Air Cargo*, 104 F.Supp.2d 160, 163 (E.D.N.Y.2000), the district court held that plaintiff's New York Labor Law claim was not preempted either expressly or implicitly by the FAA. The district court relied on *In re Air Crash Disaster at John F. Kennedy Int'l Airport*, 635 F.2d 67, 74 (2d Cir.1980), for the proposition that the FAA does not preempt state common law claims. In *Air Crash Disaster*, however, the parties had stipulated to the applica-

tion of New York law. Thus, the court of appeals did not address whether the FAA preempts state law tort claims. *In re Air Crash Disaster*, 635 F.2d at 74.

The treatment of FAA preemption in other circuits varies in rationale and outcome. These opinions are addressed *in seriatum.*

The Tenth Circuit held that the FAA does not expressly or impliedly preempt a plaintiff's state law products liability claim. *Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438 (10th Cir.1993). The defendant in *Cleveland* asserted that the FAA implicitly preempted the field of aviation safety. *Cleveland*, 985 F.2d at 1441. The Tenth Circuit concluded that the FAA did not preempt the field, based in part on its finding that the saving clause's preservation of state law remedies "shows that Congress did not intend to occupy the field of airplane safety to the exclusion of the state common law." *Cleveland*, 985 F.2d at 1438. The court of appeals also concluded that *City of Burbank*'s finding of implied preemption was not controlling, as it predated the ADA amendment. *Cleveland*, 985 F.2d at 1444. Moreover, the court rejected implied preemption on the ground that Congress' exclusion of safety from the ADA's express preemption clause necessarily meant that Congress did not intend the FAA to preempt the field of aviation safety. *Cleveland*, 985 F.2d at 1443–44. Lastly, the Tenth Circuit denied any relevance to the sovereignty clause, which states that the United States has "complete and exclusive national sovereignty in the air space above the United States," 49 U.S.C. § 1508(a), as it merely addressed "Congress' intent to keep the United States free from military planes from foreign nations, and not domestic safety concerns." *Cleveland*, 985 F.2d at 1444.

Nevertheless, the Supreme Court's subsequent decision of *Geier v. American Honda Motor Co, Inc.*, dilutes the persuasive force of *Cleveland*. As discussed above, the Supreme Court held that the presence of an express preemption provision or a saving clause in a statute does not by itself foreclose an implied preemption analysis. *Geier*, 529 U.S. at 867–68, 120 S.Ct. 1913. Significantly, the Court stated that "this Court has repeatedly 'decline[d] to give broad effect to saving clauses where doing so would upset the careful regulatory scheme established by federal law.' " *Geier*, 529 U.S. at 871, 120 S.Ct. 1913 (citation omitted). Thus, *Geier* weakened two of the rationales supporting *Cleveland*.

In contrast to *Cleveland*, the First Circuit has held that the FAA regulations governing pilot qualifications implicitly preempt Rhode Island's state law governing employee drug testing as applied to pilots. *French v. Pan Am Express*, 869 F.2d 1 (1st Cir.1989). The First Circuit rejected the argument that the ADA's limited preemption clause indicated that "Congress meant to leave states free to regulate on all other issues [of] air safety and pilot fitness." *French*, 869 F.2d at 3. Rather, that court held that the "intricate web of statutory provisions" setting forth pilot qualification standards indicate that "Congress intended to occupy [completely] the field of pilot regulation related to air safety." *French*, 869 F.2d at 4. Moreover, the legislative history underlying the FAA "stressed the importance of a single uniform system of regulation, especially with regard to air safety." *French*, 869 F.2d at 5. The House Report explains that "[t]he administration of the new Federal Aviation Agency (1) would be given *full responsibility and authority* for the ... promulgation and enforcement of safety regulations...." *French*, 869 F.2d at 5 (citing H.R.Rep. No. 2360, 85th Cong., 2d Sess.,

22, *reprinted in* 1958 U.S.Code Cong. & Admin. News 3741, 3741 (emphasis supplied in *French* ).) Thus, the court concluded that "a single uniform system of regulation in the area of air safety was one of the primary objects sought to be obtained by passage of the [FAA]" and that a patchwork of state laws governing airspace safety would be unreasonable. *French,* 869 F.2d at 5 (quotations omitted). The court also relied on the precedent that preemption can be inferred from the goals of a federal statute, and concluded that field preemption existed based in part on "[a] common sense appraisal of the [FAA's] history and objectives [that] erases any vestige of doubt as to displacement of state laws." *French,* 869 F.2d at 5 (citing *Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 300, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988)). *But cf. Somes v. United Airlines, Inc.,* 33 F.Supp.2d 78, 87 (D.Mass.1999) (holding that the FAA does not preempt wrongful death claim, but not deciding whether FAA impliedly preempts field of safety since a wrongful death claim "falls outside the regulated field" of safety).

Similarly, the Third Circuit concluded that the FAA implicitly preempts the entire field of air safety. *Abdullah v. Am. Airlines, Inc.,* 181 F.3d 363, 365 (3d Cir. 1999). The *Abdullah* court further held that state and territorial remedies were not preempted. *Abdullah,* 181 F.3d at 368. In a thorough decision, the Third Circuit found an "overarching general standard of care under the FAA and its regulations," based in part on an FAR that states " '[n]o person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.' " *Abdullah,* 181 F.3d at 365 (quoting 14 C.F.R. § 91.13(a)). This holding was based on an examination of the FAA legislative history and on the conclusion that the ADA does not limit the scope of FAA's

preemption in the field of aviation safety. *Abdullah,* 181 F.3d at 368–72, 373.

The Fifth Circuit held that the ADA does not preempt plaintiff's state common law negligence claim, because it does not relate to services, an area that the ADA expressly preempts. *Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 336 (5th Cir.1995). That decision, however, analyzed preemption based on the ADA alone, and did not examine whether the FAA as a whole preempted the negligence claim.

Based on a review of the foregoing caselaw, this Court agrees with the preemption analyses of the First and Third Circuits, and concludes that limiting the FAA preemption calculus to the ADA unduly circumscribes the examination. The comprehensive federal regulatory scheme covering emergency evacuation procedures, the manifest purpose of the FAA to ensure safety, and the legislative history all favor finding that the standard of care is a matter of federal, not state, law. *See French v. Pan Am Express,* 869 F.2d 1 (1st Cir.1989); *Abdullah v. Am. Airlines, Inc.,* 181 F.3d 363, 365 (3d Cir. 1999). The passage of the ADA with its express preemption provision is not grounds alone for inferring that Congress intended to change the pre-existing federal scheme of regulating air safety in the original FAA. As the Supreme Court has noted, "the views of a subsequent Congress form a hazardous basis for conferring the intent of an earlier one." *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 4 L.Ed.2d 334 (1960); *accord, Auburn Housing Authority v. Martinez,* No. 01–CV–6068, 2002 WL 14158, at *8 n. 5 (2d Cir. Jan. 7, 2002). Moreover, the Supreme Court has rejected the Tenth Circuit's theory that the ADA's express preemption provision precludes a finding of implicit preemption. *See Geier v. Am. Honda Motor Co.,* 529 U.S. 861, 120 S.Ct.

1913, 146 L.Ed.2d 914 (2000); *Freightliner Corp. v. Myrick,* 514 U.S. 280, 288, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995). Congress passed the ADA twenty years after the FAA. Thus, this Court finds that the ADA's economic deregulation to promote competition is distinct and separate from the larger overarching safety issue that originally motivated passage of the FAA. Accordingly, this action presents a federal question and removal was proper.

### Conclusion

For the foregoing reasons, plaintiff's motion to remand is denied.