Jill SIKKELEE, individually and as
Personal Representative of the Estate
of David Sikkelee, deceased, Plaintiff,

v.

PRECISION AIRMOTIVE
CORPORATION, et
al., Defendants.

No. 07–cv–886.

United States District Court,
M.D. Pennsylvania.

Aug. 13, 2010.

Clifford A. Rieders, Rieders Travis Humphrey Harris Waters & Waffenschmidt, Williamsport, PA, David I. Katzman, John D. McClune, Katzman, Lampert & McClune, Troy, MI, for Plaintiff.

John M. Devaney, Perkins Cole LLP, Washington, DC, Kristen E. Dennison, William J. Conroy, William A. Rubert, Campbell Campbell Edwards & Conroy PC, Wayne, PA, Mary P. Gaston, Sara E. Baynard–Cooke, Perkins Coie, Seattle, WA, Catherine B. Slavin, Sara A. Frey, Cozen O'Connor, Philadelphia, PA, for Defendants.

*MEMORANDUM & ORDER*

JOHN E. JONES III, District Judge.

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

**I.  INTRODUCTION**

Before the Court in this wrongful death/survival action is Defendants Precision Airmotive LLC, Precision Airmotive Corporation, Burns International Services Corporation, Former Fuel Systems, Inc.,[1] and Mark IV Industries, Inc.'s [2] ("Carburetor Defendants") Motion for judgment on the pleadings and dismissal of Plaintiff Jill Sikkelee's ("Plaintiff") Complaint. (Doc. 107). For the reasons articulated in this Memorandum, the Court will grant in part and deny in part the Motion and grant Plaintiff leave to amend the Complaint.

**II.  PROCEDURAL HISTORY**

Plaintiff initiated this action on May 16, 2007 with the filing of a Complaint and asserted claims related to an aircraft accident that resulted in the death of her husband, David Sikkelee ("the decedent"). (Doc. 1). Individually and as personal representative of David Sikkelee's estate, Plaintiff named as Defendants the Carburetor Defendants, AVCO Corporation and Textron, Inc. (collectively "Textron Defendants"), Kelly Aerospace, Inc., Kelly Aero-

1.  Former Fuel Systems, Inc. was terminated as a Defendant on April 15, 2010.

2.  Mark IV Industries, Inc. was terminated as a Defendant on April 15, 2010.

space Power Systems, Inc., and Consolidated Fuel Systems, Inc. (collectively, "Kelly Defendants")[3],[4] In the 103–page Complaint, Plaintiff asserts five causes of action against the moving Carburetor Defendants—strict liability, negligence, breach of warranty, misrepresentation, and concert of action—related to the manufacture of a carburetor that Plaintiff alleges malfunctioned. On July 25, 2007, Carburetor Defendants answered Plaintiff's Complaint. On March 13, 2008, all Defendants jointly moved to transfer this case to the United States District Court for the Western District of North Carolina, and we denied that motion. (Doc. 85).

The Carburetor Defendants filed the instant Motion for Judgment on the Pleadings ("the Motion") (Doc. 107) and a brief in support thereof (Doc. 108) on March 17, 2009. Plaintiff filed her brief in opposition to the Motion on April 28, 2009. (Doc. 116). Carburetor Defendants responded on May 12, 2009. (Doc. 119). The Textron Defendants filed a brief in support of, and joining in, the Motion on April 6, 2009 (Doc. 111), to which Plaintiff responded on May 6, 2009 (Doc. 117).[5] In May of 2009, the Court issued a stay of proceedings as to all parties involved because Defendant Mark IV Industries entered bankruptcy proceedings. (Doc. 121). Upon resolution of those proceedings, the stay was lifted and an amended scheduling order issued. (Doc. 125). Accordingly, this matter is ripe for disposition.

**3.** The Kelly Defendants were terminated on July 13, 2010.

**4.** Plaintiff also named the following Defendants who have since been terminated from the action: Precision Aerospace Corporation, Precision Aerospace Services LLC, Precision Aviation Products Corporation, Precision Products LLC, and Zenith Fuel Systems LLC.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[6] A "Rule 12(c) motion is little more than a relic of the common law and code era, and it only has utility when all the material allegations of fact are admitted in the pleadings and only questions of law remain. Granting a Rule 12(c) motion results in a determination on the merits at an early stage in the litigation, and thus this court requires the movant to clearly establish that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Inst. for Sci. Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.,* 931 F.2d 1002, 1005 (3d Cir.1991) (citing *Jablonski,* 863 F.2d at 290–91, punctuation omitted). A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standard as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Turbe v. Gov't of Virgin Islands,* 938 F.2d 427, 428 (3d Cir. 1991).

Thus, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.,* 292 F.3d 361, 374 n. 7 (3d Cir.2002)).

**5.** The Kelly Defendants also joined the Motion; but, as they are no longer parties to the action, we will not consider their filings in support. (*See* Doc. 146 (approving partial settlement)).

**6.** Defendants already filed an answer and, at the time the motion was filed the trial date was in the distant future. Thus, Defendants properly raised the Motion under 12(c).

In resolving a motion to dismiss under 12(c), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir.2006).

A motion under Rule 12(b)(6) or 12(c) tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). While a complaint attacked by a motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level. . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir.2007) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal*, 129 S.Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. 1955. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a motion to dismiss. *Iqbal*, 129 S.Ct. at 1950. Next, the district court must identify "the 'nub' of the . . . complaint—the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 127 S.Ct. at 1964–65, 1969 n. 8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## IV. FACTUAL BACKGROUND

In accordance with the standard of review, we have derived the following background facts from the well-pleaded allegations of the Complaint, and construe them, and all reasonable inferences therefrom, in the light most favorable to Plaintiff as the non-moving party.

This action arises from an accident involving a 1976 Cessna aircraft, operated by the decedent David Sikkelee. On July 10, 2005, the decedent was piloting the subject aircraft when the aircraft lost power as a result of an engine fuel delivery system malfunction or defect shortly after takeoff. Because of the loss of power, the decedent

lost control of the aircraft and crashed. The decedent died as a result of severe injuries and burns sustained from the accident.

The subject aircraft was overhauled in 2004 to restore it to a "factory new or as new condition with new or as new components." At that time a carburetor was installed that was rebuilt or overhauled by the Kelly Defendants, who installed new or as new parts within said carburetor. The engine was tested and approved for a return to service. The Carburetor Defendants serviced, manufactured, or supplied the carburetor. The Textron Defendants were the designer, manufacturer, seller, supplier, certifier, overhauler, repairer, maintainer, and product support servicer of the engine that was installed in the subject aircraft.

Plaintiff maintains that the Carburetor and Textron Defendants were aware of numerous problems and defects with the screws and locking mechanism that attaches the carburetor together. Plaintiff further maintains that these Defendants failed to meet industry standards by failing to warn of these problems or provide instructions to maintain their safety. Plaintiff advances that, beyond a mere failure to follow industry standard in that respect, Defendants further knowingly concealed such a defect. Plaintiff asserts myriad other allegations related to these Defendants' negligence. Thus, Plaintiff asserts the following claims against the Carburetor (Precision) Defendants and the Textron Defendants: Strict Liability (Counts I and IV); Breach of Warranties (Counts II and V); Negligence (Counts III and VI); Misrepresentation (Count X); and Concert of Action (Count XI).[7] Plaintiff seeks compensatory and punitive damages under the applicable Survival Act and Wrongful Death statute.

## V. DISCUSSION

### A. Preemption

#### 1. The Parties' Arguments

Defendants advance two central arguments to support their Motion for Judgment on the Pleadings. First and foremost, Defendants argue that Plaintiff's claims are preempted by federal law. Defendants maintain that because the Federal Aviation Act ("FAA") and other corresponding aviation-legislation create uniform and exclusive standards for the entire field of aviation safety and because federal regulation of aviation safety is pervasive, Congress intended to preempt the entire field. Defendants note that United States Court of Appeals for the Third Circuit found field-preemption in the entire field of aviation safety for those same reasons. *See Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363 (3d Cir.1999) (discussed *infra*). Thus, Defendants maintain that Plaintiff's claims must consequently allege violations of federal standards of care and, therefore, her claims that assert state-law standards of care must necessarily be dismissed.

Plaintiff responds to Defendants' preemption arguments by maintaining that the Third Circuit's mandate in *Abdullah* is inapplicable to the matter *sub judice*. In support, Plaintiff argues that *Abdullah* does not apply to this general aviation case because, unlike the commercial aviation case at bar in *Abdullah*, there are no federal regulations that apply to the specific carburetor in question. Further, and somewhat in the alternative, Plaintiff questions the holding in *Abdullah* because it did not consider the General Aviation Revitalization Amendment ("GARA") and was

---

**7.** Plaintiff also asserted the same or similar claims against the Kelly Defendants in Counts VII–IX and XII but, as previously mentioned, those Defendants are no longer a part of this action.

decided before the September 11th Victim Compensation Fund of 2001 Amendment to the FAA that expressly preserved state tort-law standards. Plaintiff also disputes the validity of *Abdullah* by arguing that its preemption conclusion was essentially overruled by the Supreme Court's preemption decision in *Wyeth v. Levine*, —— U.S. ——, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009). Finally, because there is no Supreme Court case law interpreting the FAA and field-preemption of general aviation, and because courts in other Circuits disagreed with the Third Circuit's decision in general aviation cases, Plaintiff asserts that *Abdullah* is not controlling.

Candidly, we note that the decision that follows has not been easy to reach. Both parties advance compelling arguments in support of or in opposition to the Motion, and each interpretation finds support in this clearly underdeveloped body of law. Like the learned counsel for the parties, the Court has conducted exhaustive research and has considered all apparent interpretations and conclusions. We thus detail the controlling and instructive law that has formed our conclusion below.

### 2. Controlling Statutory and Case Law

The instant Motion implicates various legal issues we must resolve: the proper method to analyze whether a field is preempted where Congressional intent is unclear; the purpose and extent of federal regulation of the aviation industry; and the extent to which our analysis is controlled by stare decisis. As such, before commencing our analysis, we find it appropriate to review the various statutes and case-law, which date back over half of a century.

**The Federal Aviation Act of 1958:** In response to a "series of fatal air crashes between civil and military aircraft operating under separate flight rules," *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 368 (3d Cir.1999), Congress enacted the Federal Aviation Act of 1958 ("FAA") "to establish a new Federal Agency with powers adequate to enable it to provide for the safety and efficient use of the navigable airspace by both civil and military operations." H.R.Rep. No. 2360, 85th Cong., 2d Sess. Congress found that a "uniform and exclusive system of federal regulation" was necessary to achieve the air-safety objectives of the FAA. *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 639, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973). Thus, "Congress intended to rest sole responsibility for supervising the aviation industry with the federal government." *Abdullah*, 181 F.3d at 368. The FAA as originally enacted contained no clause preempting state regulation in the field of aviation, and contained the following savings clause that it still retains to this day: "Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 49 U.S.C. § 40120(c); 49 U.S.C. app. § 1506.

**The Airline Deregulation Act of 1978:** Twenty years later, Congress amended the FAA with the Airline Deregulation Act ("ADA"). In order to prevent states from frustrating the deregulation of the airline industry by extensively regulating on their own, the ADA prohibited the states from enacting "any law, rule, regulation, standard, or other provision ... relating to rates, routes, or services of any air carrier having authority ... to provide air transportation." 49 U.S.C. § 41713; 49 U.S.C.A § 1305(a)(1).[8] Thus, unlike the

---

**8.** This clause was revised in 1994 to read: "[A] State ... may not enact of enforce a law, regulation, or other provision having the force and effect of law related to a price,

FAA, the ADA expressly preempted state regulation, although only with respect to "rates, routes, or services" of an "air carrier." The savings clause found in the FAA, however, remained intact.

**The General Aviation Revitalization Act of 1994:** Neither the FAA as originally enacted nor including the ADA amendment in 1994 specifically addressed products-liability actions. In response to declining sales of aircraft and increasing products-liability actions, the general aviation industry began pushing for tort reform. Subsequently, Congress passed the General Aviation Revitalization Act of 1994 ("GARA"). Ultimately, balancing the interests of the general-aviation industry and consumer-rights advocates resulted in the imposition of an eighteen (18) year statute of repose on civil actions for death, personal injury, or property damage relating to general-aviation aircraft and parts. 49 U.S.C. app. § 410101. GARA retained the FAA's original savings clause and provided that "A remedy under this part is in addition to any other remedies provided by law", 49 U.S.C. § 40120, and the legislative history reflects that "[i]n cases where the statute of repose has not expired, state law will continue to govern fully, unfettered by Federal interference." H.R.Rep. No. 103–525, 103d Cong., 2d Sess., pt. 2, at 6–7 (1994). Subsequent to the passage of GARA, some courts found that GARA's legislative history demonstrated that Congress intended *not* to preempt the entire field of aviation safety, and some scholars observed that, until the commencement of the statute of repose, state products-liability standards control actions regarding the design or defects of general-aviation

aircraft and component parts. *See, e.g.,* John D. McClune, *There is No Complete, Implied, or Field Federal Preemption of State Law Personal Injury/Wrongful Death Negligence or Product Liability Claims in General Aviation Cases,* 71 J. AIR L. & COM. 717 (Fall 2006) ("There is a clear distinction between enacting minimum federal regulations pertaining to general aviation aircraft and component design and manufacture and creating a body of federal common law foreclosing state rights."); Timothy S. McAllister, *A "Tail" of Liability Reform: General Aviation Revitalization Act of 1994,* 23 TRANSP. L.J. 301 (1995).

Courts and commentators alike thus disagree with the implications of the enactment of GARA—even if Congress intended to preempt the entire aviation field with the FAA, it failed to expressly state that intention with the original passage of the FAA, nor did it do so twenty years later with the passage of the ADA, and it failed again to so state forty years later with the passage of GARA. As discussed below, some courts have held that Congress therefore did not intend to preempt the entire field of aviation, *see Cleveland v. Piper Aircraft Corp.,* 985 F.2d 1438 (10th Cir.1993) [9], while others, including the Third Circuit, have held that the comprehensive and pervasive nature of federal regulation evinces Congressional intent to impliedly preempt the entire field of aviation. *See Abdullah v. Am. Airlines, Inc.,* 181 F.3d 363 (3d Cir.1999). This reference provides us with an appropriate segue to the material case law.

***Abdullah v. American Airlines:***[10] Before the Third Circuit in *Abdullah v.*

---

route, or service of an air carrier." 49 U.S.C. § 41713(b)(1).

**9.** *Cleveland,* a products-liability action related to aircraft design, was decided a year before GARA was passed. The Tenth Circuit noted

that "the plain language of the Federal Aviation Act suggests that Congress intended that the Act have no general preemptive effect." *Id.* at 1442.

**10.** 181 F.3d 363 (3d Cir.1999).

*American Airlines* ("*Abdullah*") was an action for damages for injuries sustained during an American Airlines flight. The plaintiffs alleged that defendants were negligent in failing to take precautions to avoid severely turbulent conditions or to warn the passengers of those conditions. A jury found for plaintiffs and awarded more than two million dollars in damages. Facing post-trial motions, the District Court of the Virgin Islands held that the FAA impliedly preempts state and territorial regulations, and thus plaintiffs should have recovered only for claims that asserted violations of federal standards. The District Court then certified to the Third Circuit the following question: Does federal law preempt the standards for air safety, but preserve State and Territorial damage remedies? The Third Circuit, based upon the following reasoning, answered each part of the certified question in the affirmative.

With respect to the first clause of the certified question, the Third Circuit found implied field-preemption of the "entire field" of aviation because the FAA and other regulations "establish complete and thorough safety standards for interstate and international air transportation that are not subject to supplementation by, or variation among, jurisdictions." *Abdullah*, 181 F.3d at 367. In so holding, the Third Circuit noted that they chose to "depart from the precedent established by a number of cases which hold that federal law does not preempt any aspect of air safety." *Id.* at 368 (citing *In re Air Crash Disaster at John F. Kennedy Int'l Airport*, 635 F.2d 67, 74–75 (2d Cir.1980); *Trinidad v. American Airlines*, 932 F.Supp. 521 (S.D.N.Y.1996); *In re Air Crash Disaster at Stapleton Int'l Airport*, 721 F.Supp. 1185, 1187 (D.Colo.1988)). In support of this conclusion, the Court first ruled that, based upon the legislative history of the FAA, Congress intended to vest sole responsibility for aviation in the federal government.[11] The Court further advanced that "[t]o effectuate this broad authority to regulate air safety, the Administrator of the FAA has implemented a comprehensive system of rules and regulations, which promotes flight safety by regulating pilot certification, pilot pre-flight duties, pilot flight responsibilities, and flight rules." *Abdullah*, 181 F.3d at 369. Thus, the Court concluded that "[b]ecause the legislative history of the FAA and its judicial interpretation indicate that Congress's intent was to federally regulate aviation safety ... *any* state or territorial standards of care relating to aviation safety are federally preempted." *Id.* at 371 (emphasis in original).

The Court recognized that "[d]espite the legislative history and interpreting author-

---

**11.** Congress found the creation of a single, uniform system of regulation vital to increasing air safety. [...] By enacting the FAA, Congress intended to rest sole responsibility for supervising the aviation industry with the federal government: "Aviation is unique among transportation industries in its relation to the federal government—it is the only one whose operations are conducted almost wholly within federal jurisdiction, and are subject to little or no regulation by States or local authorities. Thus, the federal government bears virtually complete responsibility for the promotion and supervision of this industry in the public interest." S.Rep. No. 1811, 85th Cong., 2d Sess. 5 (1958). Similarly, the House Report accompanying the FAA indicates that one of the purposes of the Act is to give "the Administrator of the new Federal Aviation Agency ... full responsibility and authority for the advancement and promulgation of civil aeronautics generally, including the promulgation and enforcement of safety regulations." H.R.Rep. No. 2360.... "It is essential that one agency of government, and one agency alone, be responsible for issuing safety regulations if we are to have timely and effective guidelines for safety in aviation."
*Abdullah*, 181 F.3d at 368–69.

ity which have informed our decision, many courts have held that the field of aviation safety is not federally preempted." *Id.* at 372. The Court nonetheless detailed, at length, why the rationale used by those courts was unpersuasive. First, the Court highlighted that other courts have employed the maxim *expressio unius est exclusio alterius,* (to express one is to exclude the other), to conclude that, because the ADA only expressly mandates the preemption of "rates, routes, and services" and does not overtly preempt other state tort law claims such as personal injury, the latter claims were never intended to be preempted by federal law. The Court averred that this maxim "serves only as an aid in discovering the legislative intent when that is not otherwise manifest", *id.* at 373 (quoting *United States v. Barnes,* 222 U.S. 513, 519, 32 S.Ct. 117, 56 L.Ed. 291 (1912)), and that Congress's clear intent to preempt the entire field of aviation in the enactment of the FAA should not be skewed by the enactment of a separate statute (the ADA) twenty years later. *See id.* at 372–73. Further, the Court rejected other courts' conclusion that, because Congress directs the Administrator to prescribe "minimum standards" to promote aviation safety, state and territorial common-law could require duties beyond FAA regulations as long as they do not conflict with the federal law. Instead, the Court offered that "in a federally preempted area, the question whether state or territorial law conflicts with federal law is a pointless inquiry." *Id.* at 374. Moreover, the Court held that the FAA's savings clause preserves only remedies—it does not preserve state standards or causes of action even when interpreted with the FAA's insurance clause.[12] Final-

ly, the Court disagreed with those courts that found that states may regulate aviation safety pursuant to their traditional police powers, asserting that states may only invoke those powers in fields that are not federally preempted.

Although the Court found that state and territorial standards of care in aviation safety are entirely preempted, the Court also found that the state and territorial remedies still exist for violations of federal standards. The Court affirmed that "it is evident in both the savings and the insurance clauses of the FAA that Congress found state damage remedies to be compatible with federal aviation safety standards", *id.* at 375, even if state *standards* are not likewise compatible.

***Duvall v. Avco Corporation:***[13] We were called upon to interpret and apply the essential holding of *Abdullah* in *Duvall v. Avco Corporation,* 05–cv–1786, an action that involved a fatal aircraft accident. The plaintiff asserted claims sounding in wrongful death, negligence, and products liability and alleged that the accident was caused by malfunctions of the aircraft's engine and fuel servo. Upon the filing of a motion to dismiss or for a more definite statement, we were presented with nearly the same arguments regarding preemption of claims as we are today. We originally found that the holding of *Abdullah* applied only to the *operation* of an aircraft, but not the *manufacturing* of aircraft parts. *DuVall v. AVCO Corporation,* 2006 WL 224020, *3, 2006 U.S. Dist. LEXIS 6093, *9 (M.D.Pa. January 30, 2006). However, upon consideration of the defendants' motion for reconsideration, we were compelled to reluctantly agree with the defen-

---

12. The insurance clause mandates that airlines have liability insurance "for bodily injury to, or death of, an individual ... resulting from the operation or maintenance of the aircraft." 49 U.S.C.A. § 41112(a).

13. 2006 WL 1410794, 2006 U.S. Dist. LEXIS 31445 (M.D.Pa. May 19, 2006).

dants that we originally misconstrued the essential holding of *Abdullah*. 2006 WL 1410794, 2006 U.S. Dist. LEXIS 31445 (M.D.Pa. May 19, 2006). In the May 19, 2006 Order, we noted that the Third Circuit did not limit its opinion in *Abdullah* to piloting or aircraft operation, and explicitly "rejected the approach adopted by other courts that found only certain aspects of aviation safety to be preempted...." *Id.* at *2, 2006 U.S. Dist. LEXIS 31445, at *8. Thus, we interpreted *Abdullah* as evidencing the Third Circuit's intent, primarily through its precise language, to hold that the *entire* field of aviation is preempted: including its application to the manufacturing of aircraft parts. Our sister courts in this Circuit have also declared that the Third Circuit intended to hold that the entire field of aviation safety is preempted by federal law. *See, e.g. Landis v. U.S. Airways, Inc.*, 2008 WL 728369, *2, 2008 U.S. Dist. LEXIS 21300, *12 (W.D.Pa. March 18, 2008).

**Wyeth v. Levine:**[14] The United States Supreme Court recently addressed a preemption claim in the field of products liability in *Wyeth v. Levine* ("*Wyeth*"). In *Wyeth*, the Supreme Court granted certiorari on a decision of the Vermont Supreme Court to determine whether the Food and Drug Administration's drug labeling judgments preempted state law products liability claims. The Vermont Supreme Court had affirmed a jury verdict that awarded damages to the plaintiff on her state law claims. In affirming the decision of the Vermont Supreme Court, the Supreme Court articulated the "two cornerstones" of preemption jurisprudence:

> First, "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). Second, "[i]n all pre-emption cases, and particularly in those in which Congress has 'legislated ... in a field which the States have traditionally occupied,' ... we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Lohr*, 518 U.S. at 485, 116 S.Ct. 2240.

*Id.* at 1194–95 (other internal citations omitted). Thus, with those cornerstones in mind and because Congressional intent was not explicit, the Court reviewed the legislative history of the FDA and ultimately ruled that Congress never intended to preempt state-law claims with respect to drug labeling requirements[15], and thus the plaintiff could properly assert products liability claims.

**Elassaad v. Independence Air, Inc.:**[16] The Third Circuit recently revisited their reasoning in *Abdullah* in *Elassaad v. Independence Air, Inc.* ("*Elassaad*"), and reaffirmed that "*Abdullah's* primary holding was that federal law preempted the entire field of aviation safety." 613 F.3d 119, 126 (3d Cir.2010). The Court clarified, however, that their "use of the term 'aviation safety' in *Abdullah* to describe the field

---

**14.** 129 S.Ct. 1887 (2009).

**15.** Specifically, the Court stated:
If Congress thought state-law suits posed an obstacle to its objectives, it surely would have enacted an express pre-emption provision at some point during the FDCA's 70–year history. But, despite its 1976 enactment of an express pre-emption provision for medical devices, see § 521, 90 Stat. 574

(codified at 21 U.S.C. § 360k(a)), Congress has not enacted such a provision for drugs. *Id.* at 1200.

**16.** 613 F.3d 119 (3d Cir.2010). The first opinion issued by the Third Circuit in this case on May 12, 2010 was vacated and amended by this opinion. *See Elassaad v. Independence Air, Inc.* 604 F.3d 804 (3d Cir. 2010).

preempted by federal law was [ ] limited to in-air safety." *Id.* at 127. Thus, as the plaintiff in *Elassaad* was asserting common-law negligence claims regarding an injury he sustained while *disembarking* an airplane, the plaintiff could avail himself of common-law standards of care because the issue did not implicate the preempted field of in-air safety. Notably for purposes of the action *sub judice,* when distinguishing in-air safety and safety measures when disembarking an aircraft, the Court detailed in great length the sort of measures that are encompassed within in-air safety and thus are preempted. For example, the Court noted that the FAA directs the Aviation Administration to issue regulations to reduce or eliminate the possibility or recurrence of aircraft accidents. Further, in highlighting that "most of the regulations adopted pursuant to the [FAA] concern aspects of safety that are associated with flight", the Court propounded as an example that "the regulations detail certification and 'airworthiness' requirements for aircraft parts." *Id.* at 128. Thus, although *Elassaad* slightly narrowed the broad definition of the "field of aviation" that could be interpreted from *Abdullah,* it strongly, and perhaps explicitly, suggests that the manufacture of aircraft parts is nonetheless contained in this field and, thus, subject solely to federal standards of care.

Notably, *Elassaad* was decided by the Third Circuit after the Supreme Court's decision in *Wyeth,* which Plaintiff claims contradicts the Third Circuit's field-preemption framework articulated in *Abdullah.* The Third Circuit declined to decide whether *Wyeth* has any effect on the holding in *Abdullah* because *Abdullah* did not apply to the facts of *Elassaad.*

### 3. Conclusion

There is certainly not an absence of authority that agrees with Plaintiff's proffered interpretation of the law.[17] Indeed, we find the logic therein alluring, and perceive the wisdom of the various decisions in other Circuits that have failed to find preemption in circumstances similar to the case at bar. Nonetheless, no matter how compelling their reasoning, those authorities are not controlling for our purposes as we must follow the state of the law as articulated by the Third Circuit. The legal principle of stare decisis commands no less. Unlike *Elassaad,* which was distinguishable from *Abdullah* on the grounds that the case did not implicate "in-air" safety, we find that, based upon the state of the controlling law, this action is indeed controlled by *Abdullah.* We have previously extended *Abdullah's* holding to general aviation cases, and there has been no change in the controlling law to preclude us from doing the same at this juncture. Further, although Plaintiff challenges the Third Circuit's preemption analysis and argues that *Wyeth's* preemption analysis supports no purpose of Congress to

---

**17.** *See, e.g. Sheesley v. Cessna Aircraft Co.,* 2006 WL 3042793, 2006 U.S. Dist. LEXIS 27133 (D.S.D.2006); *Monroe v. Cessna Aircraft Co.,* 417 F.Supp.2d 824 (E.D.Tex.2006); *Sakellaridis v. Polar Air Cargo, Inc.,* 104 F.Supp.2d 160 (S.D.N.Y.2000); *Skidmore v. Delta Air Lines, Inc.,* 2000 WL 1844675, 2000 U.S. Dist. LEXIS 18587 (N.D.Tex. Dec. 15, 2000); *see also* John D. McClune, *Article: There is No Complete, Implied, or Field Federal Preemption of State Law Personal Injury/Wrongful Death Negligence or Product Liability Claims in General Aviation Cases,* 71 J. Air L. & Com. 717, 730 (Fall, 2006) ("[...] *Abdullah* involved a commercial flight ... even if correctly decided its reasoning does not apply to general aviation product liability, breach of warranty ... cases.... *Abdullah* contradicts the FAA and its history [and] ignores GARA."); 1–9 Aviation Accident Law § 9.03 (2010) ("There are some indications that [*Abdullah* ] will not withstand the test of time ... Although one court in within the Third Circuit's jurisdiction has followed it, the decision has been openly or implicitly criticized, or simply ignored, by other courts.").

preempt, we find that the analysis of *Abdullah* is still applicable post-*Wyeth*. We reach this conclusion because the Third Circuit applied in *Abdullah* the same process of analysis that was articulated in *Wyeth*. Thus, any claims that Plaintiff asserts under a state-law standard of care must necessarily be dismissed.

## B. FAILURE TO STATE A CLAIM

Defendants argue that Plaintiff's remaining claims that do not rely on state standards contain only "cursory references to an alleged breach of an unidentified federal law". Defendants assert that Plaintiff fails to plead that she, or the decedent, were intended to be a third-party beneficiary for the sale of the carburetor, and also fails to identify any express warranty related to the carburetor. Thus, Defendants maintain that the Complaint fails to give Defendants adequate notice, and therefore should be dismissed for failure to state a claim upon which relief can be granted. Plaintiff counters that she has provided a "short and plain statement of the claim showing that the pleader is entitled to relief" sufficient to satisfy the notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2). She further asserts that even if the Court finds that she has not satisfied the pleading requirements she should nonetheless be granted leave to file an amended complaint so that she can list violations of federal regulations by number. We agree, and thus find that the fairest course in this matter is to grant Plaintiff leave to amend the Complaint and assert claims under federal standards of care.

## VI. CONCLUSION

Because of the reasons articulated in this memorandum, we ultimately grant Defendants' Motion vis-a-vis Plaintiff's claims that assert duties under state common-law standards of care, and shall accordingly dismiss those claims. We will however grant Plaintiff leave to amend the Complaint against the remaining Defendants so that she may endeavor to properly assert her claims under appropriate federal standards.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. Defendants' Motion for Judgment on the Pleadings (Doc. 107) is **GRANTED IN PART AND DENIED IN PART** to the following extent:

   a. Plaintiff's claims that are based upon state-law standards of care are **DISMISSED**;

   b. The Motion is denied in all other respects; and

2. Plaintiff **SHALL FILE** an Amended Complaint to properly assert her claims as detailed above within twenty (20) days of the date of this Order. Failure to do so shall result in dismissal of the action.